[No. E007134. Fourth Dist., Div. Two. Dec. 7, 1990.]

VICTORIA GROVES FIVE, Plaintiff and Respondent, v. CHAFFEY JOINT UNION HIGH SCHOOL DISTRICT, Defendant and Appellant.

**COUNSEL**

Alan K. Marks, County Counsel, and Daniel B. Haueter, Deputy County Counsel, for Defendant and Appellant.

Clayson, Mann, Arend & Yaeger and David R. Saunders for Plaintiff and Respondent.

OPINION

DABNEY, Acting P. J.—Defendant, Chaffey Joint Union High School District (District), appeals from a judgment awarding plaintiff, Victoria Groves Five, a California partnership, (Victoria), a refund of school facility fees. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND

In September 1986 the Legislature enacted Government Code[1] sections 53080[2] and 65995[3] which authorized school districts to levy school facility fees on development. Under these statutes, the District adopted a resolution to levy a fee of $.47 per square foot on covered or enclosed space in new residential development. On January 8, 1987, Victoria paid the District a school facility fee of $146,497, based on all covered or enclosed area in its residential development.

On March 14, 1988, in emergency legislation (Stats. 1988, ch. 29) effective the same day, the Legislature amended sections 53080[4] and 65995 to limit a school district's authority to impose school facility fees on new residential construction to "habitable area." The amendment to section 65995 provided for a fee of no more than $1.50 per square foot of *habitable* space for any residential development and defined "habitable space" as "the space determined by the building department of the city or county issuing the building permit, in accordance with the building standards of that city or county, to be within the perimeter of a residential structure, not including any carport, walkway, garage, overhang, patio, detached accessory structure, or similar area." (§ 65995, subd. (b)(1).)

Victoria then filed this action to recover an alleged overpayment in the amount of $37,368, representing the fees paid for the "covered or enclosed"

---

[1] All statutory references are to the Government Code unless otherwise indicated.

[2] When Victoria paid its school fees, Section 53080 stated, "(a) The governing board of any school district is authorized to levy a fee . . . against any development project, . . . within the boundaries of the district, for the purpose of funding the construction or reconstruction of school facilities, . . . This fee . . . may be applied only to new commercial and industrial construction, and, as to residential development, to new construction, and other construction to the extent of the resulting increase in habitable area."

[3] When Victoria paid its school fees, section 65995 provided, "(b) In no event shall the amount of any fee . . . exceed the following: [¶] (1) *One dollar and fifty cents ($1.50) per square foot of covered or enclosed space, in the case of any residential development.*" (Italics added.)

[4] Following the 1988 amendment, the last sentence of section 53080, subdivision (a) stated, "This fee . . . may be applied only to new commercial and industrial construction, to new residential construction, and, to the extent of the resulting increase in habitable space, as defined in Section 65995, to other residential construction as to any development project having a value in excess of twenty thousand dollars ($20,000)."

space within the development which was not "habitable" space as defined by the amended statute. After a court trial, the court held, "[T]he Legislature, in adopting AB 1929, intended to clarify existing law as to the determination by the tax-levying authorities of what constituted 'habitable space'." The District appeals from the judgment which ordered a refund of $37,368 in fees.

## DISCUSSION

The sole issue in this case is whether sections 53080 and 65995, as they were in effect on January 8, 1987, authorized a school district to levy school facility fees on "covered or enclosed" space in new residential development. The District argues that the statutes authorized fees on such space until the 1988 amendment made the law more restrictive. Victoria contends that the original statutes were ambiguous, the Legislature always intended to limit school facility fees to increases in habitable areas, and the 1988 amendment did not change the law, but merely clarified what it had been all along.

■ *Analysis of the Statute.* "Our analysis starts from the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] In determining intent, we look first to the words themselves. [Citations.] If the statutory language is clear and unambiguous, there is no need for construction. [Citations.]" (*Viking Pools, Inc.* v. *Maloney* (1989) 48 Cal.3d 602, 606 [257 Cal.Rptr. 320, 770 P.2d 732].) " 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation]; 'a construction making some words surplusage is to be avoided.' [Citation.]" (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) These rules are codified in Code of Civil Procedure section 1858.[5]

■ The challenged statute stated, "This fee . . . may be applied only to new commercial and industrial construction, and as to residential development, to new construction, and other construction to the extent of the resulting increase in habitable area." (§ 53080, subd. (a).) The District argues that the qualifying phrase, "to the extent of the resulting increase in habitable area" applies only to the immediately preceding phrase, "other [residential] construction." This interpretation is supported by the "long-standing rule of statutory construction—the 'last antecedent rule'—[which]

---

[5] Code of Civil Procedure section 1858 states, "In the construction of a statute . . . , the office of the judge is simply to ascertain and declare what is in terms or substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."

provides that 'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.' [Citations.]" (*White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191].)

The punctuation of the statute also indicates that the qualifying phrase is not intended to apply to new residential construction. "While not controlling, punctuation is to be considered in the interpretation of a statute. [Citations.]" (*Duncanson-Harrelson Co.* v. *Travelers Indemnity Co.* (1962) 209 Cal.App.2d 62, 66 [25 Cal.Rptr. 718].) "Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma. [Citation.]" (*White* v. *County of Sacramento*, *supra*, 31 Cal.3d at p. 680.) Such evidence is lacking here; no comma separates the two phrases.

We also construe section 53080 in light of section 65995, which was adopted at the same time, and which bears on the meaning of the challenged language. (*People* v. *Corey* (1978) 21 Cal.3d 738, 743 [147 Cal.Rptr. 639, 581 P.2d 644].) When Victoria paid the fees, section 65995 provided that school fees could not exceed $1.50 "per square foot of covered or enclosed space, in the case of any residential development." To adopt the construction which Victoria urges for section 53080, we would be required, in effect, to substitute the term "habitable space" for the term "covered or enclosed space" in construing section 65995. Such a construction would do violence to the clear language of section 65995.

■ Finally, if we were to adopt the interpretation of section 53080 urged by Victoria, we would render certain language in the statute surplusage. If the Legislature did not intend to distinguish between new and other residential construction as to the basis for imposing school facility fees, it could simply have referred to "residential construction" without listing the two types of such construction. We adopt the interpretation of a statute which gives effect to each word or phrase used. (Code Civ. Proc., § 1858.)

*Legislative Intent.* Victoria next argues that the legislature could not have intended to authorize school fees on covered and enclosed areas, because only the habitable portions of residential development lead to the need for more school facilities. The declared purpose of the statutes is to foster a partnership between the state and local governments and the private sector to insure the availability of school facilities to serve the population growth generated by new economic development. (Stats. 1986, ch. 887, § 7, subd. (d).) Imposing fees on new residential development on the basis of covered or enclosed space is not inconsistent with the legislative purpose. The stat-

utes provide for school fees to be imposed on new commercial and industrial development as well as new residential development. Moreover, the Legislature did not attempt to create any mathematical calculation to determine which construction leads to population growth. ■ The court may not speculate that the Legislature meant something other than it actually said.

■ *Interpretation of Statute by State Agency.* Education Code section 17705.5 authorizes the state to match the funds which school districts collect from developers. Victoria urges us to accept, as the trial court did, the interpretation of the State Allocation Board, the state agency responsible for implementing the school funding scheme. "An administrative agency's construction of a statute, since it is charged with the enforcement of that statute, is entitled to great weight. [Citations.]" (*Addison v. Department of Motor Vehicles* (1977) 69 Cal.App.3d 486, 493 [138 Cal.Rptr. 185].) Ultimately, however, the construction of a statute is a question of law for the court, and " ' "an erroneous administrative construction does not govern the interpretation of a statute, . . ." [Citations.]' [Citation.]" (*Id.*, at p. 497.)

The fees that the state will match are described in the guidelines of the State Allocation Board, as follows: "The total amount of the match is the amount of the maximum fee set forth in Government Code Section 65995(b) times the number of square feet of residential, commercial and industrial construction, as defined and qualified in this section, for which building permits are issued within the boundaries of the school district during the match period . . . ." (State Allocation Board, *Amended Guidebook* (June 1987) p. 35.) The Amended Guidebook further provides that the matching share calculation for residential construction is based on "The habitable space of a new structure on a site never before occupied by a structure." (*Ibid.*) The guidelines define "habitable area" to exclude "covered walkways, open roofed-over area, porches, exterior terraces or steps, chimneys, roof overhangs, parking garages or unheated basements." (*Id.*, at p. 6.) As we discuss above, our interpretation of the statute, based on adherence to long-standing rules of construction, differs from that of the State Allocation Board, and we decline to adopt its interpretation. (*Addison v. Department of Motor Vehicles, supra*, 69 Cal.App.3d at p. 497.)

*Effect of 1988 Amendment.* ■ Victoria argues that the 1988 amendment was merely a clarification, rather than a change, of existing law. Victoria concedes that when the Legislature amends a statute, its purpose is to change existing law, unless the Legislature clearly expresses the contrary. (*W. R. Grace & Company v. Cal. Emp. Com.* (1944) 24 Cal.2d 720, 729 [151 P.2d 215]; *Verreos v. City and County of San Francisco* (1976) 63

Cal.App.3d 86 [133 Cal.Rptr. 649].) The *Verreos* court stated, "It is a settled principle of statutory construction that a material change in the language of a legislative enactment is ordinarily viewed as showing an intent on the part of the Legislature to change the meaning of the statute. [Citations.] The courts will not infer that the Legislature intended only to clarify the law *unless the nature of the amendment clearly demonstrates that this is the case* [citation] *or the Legislature itself states in a particular amendment that its intent was to be declaratory of the existing law.* [Citation.]" (*Id.*, at p. 99, italics added.)

Victoria relies on statements in *W. R. Grace & Company* v. *Cal. Emp. Com.*, *supra*, 24 Cal.2d at page 729, and *Pacific Intermountain Express* v. *National Union Fire Ins. Co.* (1984) 151 Cal.App.3d 777, 781 [198 Cal.Rptr. 897], that surrounding circumstances may indicate that an amendment was merely a clarification of existing law. Victoria argues that districts throughout the state had reached different conclusions as to the meaning of the school facilities fees statutes, and that this was evidence the Legislature intended to clarify the law. (*W. R. Grace, supra*, 24 Cal.2d at p. 729.) However, the record is devoid of evidence on this point.

The Legislative Counsel's Digest to Assembly Bill No. 1929, the bill which amended sections 53080 and 65995 in March 1988, stated, "(3) Existing law authorizes school district governing boards to levy school facilities fees subject to a maximum fee liability per square foot of *covered or enclosed space of residential, commercial, or industrial development.*

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"This bill would . . . provide that, as to residential development, the school facilities fees or other requirements may be levied only against the habitable space, as defined, of new construction. . . ." (Italics added.)

The Legislative Counsel's Digest is a proper resource to determine the intent of the Legislature. (*Shelton* v. *City of Westminster* (1982) 138 Cal.App.3d 610, 614 [188 Cal.Rptr. 205].) Here, the Legislative Counsel's Digest indicates unequivocally that the Legislature intended to change the law.

*Retroactivity.* ■ Victoria argues that the amendments should be applied retroactively, citing *Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, footnote 8 [114 Cal.Rptr. 589, 523 P.2d 629]. However, as a general rule, ". . . statutes are not to be given a retroactive effect unless the Legislature has expressly so declared." (*Bohrn* v. *State Farm etc. Ins. Co.* (1964) 226 Cal.App.2d 497, 505 [38 Cal.Rptr. 77].) Assembly Bill No. 1929

contains no language which expresses or implies that the amendment should operate retroactively. As we have discussed above, the amendment does not merely clarify a prior enactment, but effects a change in the law. The general rule against retroactivity applies.

DISPOSITION

The judgment is reversed.

Timlin, J., and McDaniel, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.