[No. A090565. First Dist., Div. Two. Mar. 23, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT BREWER, Defendant and Appellant.

**COUNSEL**

Eric Liberman, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Enid Camps and Joan Killeen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

After he was convicted of grand theft (Pen. Code, § 487),[1] the trial court ordered Robert Brewer to provide blood and saliva samples as a condition of probation. In so doing it relied, as authority for this condition, on section 296.1, subdivisions (c) and (d), of the DNA and Forensic Identification Data Base and Data Bank Act of 1998 (the DNA Act) (§ 295 et seq.). The trial court imposed this requirement on the basis of Brewer's prior conviction for sexual battery, not his current conviction for grand theft. Brewer argues that the trial court's reasoning was improper and that the provision of blood and saliva samples cannot be a condition of probation unless the *current* crime is a qualifying offense under the DNA Act.

We conclude that, under the facts of this case, section 296.1, subdivisions (c) and (d), do not permit imposition of this condition of probation. However, while those subdivisions did not give the trial court the authority to

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

impose this condition of probation, another portion of the DNA Act that requires the provision of blood and saliva samples by individuals subject to the sexual-offender registration requirements, did give the court such authority. The trial court's erroneous reliance on section 296.1, subdivisions (c) and (d) is, therefore, harmless and we affirm.

## II. Procedural Background

Given the nature of the issue in this appeal, we provide only a brief discussion of the procedural background of this case. Brewer was arrested on October 15, 1999, for allegedly defrauding his employer. Brewer was released on bail on November 5, 1999, having served 22 days in custody. On November 10, 1999, the Alameda County District Attorney filed an information charging Brewer with grand theft (§ 487) and alleging that from May 29, 1987, to May 23, 1989, Brewer served a prison term for sexual battery (§§ 667.5, subd. (b), 243.4). On December 2, 1999, appellant entered a plea of no contest as part of a plea agreement ensuring him a sentence of time served, three years of probation, and a restitution fine. "For purposes of sentencing" the court struck the allegation of a prior prison term.

Consistent with the terms of the plea agreement, the trial court sentenced Brewer to probation. One condition of probation was a requirement that Brewer submit blood and saliva samples. Brewer objected to this condition and this timely appeal followed.

## III. Discussion

### A. Overview of the DNA Act

The Legislature enacted the DNA Act in 1998 as a replacement to section 290.2. (See Stats. 1998, ch. 696, §§ 1, 2.) By the time of its repeal, section 290.2 required any person who was convicted of murder, felony assault, felony battery or specified sex offenses and who was confined in a penal institution or granted probation, to provide "two specimens of blood and a saliva sample." (See Stats. 1983, ch. 700, § 1, pp. 2680-2681; Stats. 1996, ch. 917, § 2.) Section 290.2 also authorized the Department of Justice to perform DNA analysis on the specimens but limited the use of that information to "law enforcement purposes." (See Stats. 1996, ch. 917, § 2.)

The author of the DNA Act explained that one of the primary reasons for replacing section 290.2 was the desire to close loopholes in that law. (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1332 (1997-1998 Reg. Sess.) as introduced Feb. 28, 1997, coms. (2) & (3).) The new

legislation was intended to reach a broader class of offenders and apply regardless of the sentence imposed or the disposition rendered. (Legis. Counsel's Dig., Introduction of Assem. Bill No. 1332 (1997-1998 Reg. Sess.) Feb. 28, 1997, p. 1.)

The findings and purpose of the DNA Act are also set forth in the act's first article. (See § 295.) There, the Legislature reiterates its intent to clarify existing law and make the state's DNA and forensic identification data base and data bank a "more effective law enforcement tool" so as to allow for the "expeditious detection and prosecution" of sex offenders and other violent criminals. (§ 295, subds. (b)(3) & (c); see also Legis. Counsel's Dig., Introduction of Assem. Bill No. 1332 (1997-1998 Reg. Sess.) Feb. 28, 1997, p. 1.)

The second article of the DNA Act is entitled "Offenders Subject to Sample Collection." Section 296 of that article lists all of the offenses for which a defendant must submit two specimens of blood and a saliva sample (DNA samples), as well as "right thumbprints and a full palm print impression of each hand" (collectively, personal identification samples).[2] (§ 296, subd. (a)(1).) Those qualifying offenses include, among others, murder, felony spousal abuse, battery, and offenses described in section 290 (concerning registration requirements of sex offenders). (§ 296, subd. (a).) Section 296 contemplates that submission to testing will occur as soon as administratively practicable, regardless of the type of confinement (§ 296, subd. (b)) and makes compliance mandatory, regardless of whether those required to provide the samples have prior notice of the requirement. (§ 296, subd. (c).)[3]

Section 296.1 identifies when and where various offenders must provide personal identification samples. (§ 296.1.) Section 296.2 provides for the replacement of inadequate samples (§ 296.2, subd. (a)) and authorizes analysis of the submitted samples (§ 296.2, subd. (b)). Section 296.2 also provides that offenders required to register under section 290 who have not previously provided personal identification samples must submit them promptly after notification of this requirement. (§ 296.2, subd. (c).)

The remaining articles of the DNA Act concern usage of the DNA data base (§ 297), collection and forwarding of personal identification samples

---

[2] We separately identify blood and saliva samples as "DNA samples" because Brewer's condition of probation solely required provision of blood and saliva and did not mention the thumb and palm print requirements of section 296.

[3] The Legislature amended the DNA Act in 1999 and, in part, added two subdivisions to section 296. (See Stats. 1999, ch. 475, § 3.) Those amendments were not operative at the time of Brewer's sentencing.

(§§ 298-298.1), expungement of information (§ 299), limitations on disclosure (§§ 299.5-299.7) and construction of the DNA Act (§§ 300-300.3).

### B. *The Parties' Arguments*

Brewer argues that the requirement of providing personal identification samples applies only when the current conviction constitutes a qualifying offense. However, he concedes that the statute could be read as imposing this requirement even if the current offense is not a qualifying offense so long as the offender had a prior conviction for a qualifying offense. Brewer asks the court to interpret the statute in his favor under the theory that, if penal statutory language is capable of two interpretations, the court should construe the statute as favorably to the defendant as reasonably possible. (See *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 312 [58 Cal.Rptr.2d 855, 926 P.2d 1042] (*Lungren*).)

The People argue that subdivisions (c) and (d) of section 296.1 both apply to offenders with past qualifying offenses. According to the People, the statutory language is clear, but even if it could be argued that the statutory language is ambiguous, the legislative intent of the DNA Act is furthered by imposing the collection requirements on those defendants with past qualifying offenses (see § 295, subd. (b)(2)). The People also argue that, because Brewer is required to register under section 290, he is also required to provide DNA samples under section 296.2, subdivision (c), regardless of whether his section 290 conviction occurred before passage of the DNA Act.

We conclude that neither subdivision (c) nor (d) of section 296.1 gave the trial court authority to impose this condition of probation under the facts of this case, but that the error is harmless because section 296.2, subdivision (c), does provide authority for this condition of probation.

### C. *The Trial Court Did Not Rely on the Correct Portion of the DNA Act*

The trial court considered both section 296.1, subdivision (c), and section 296.1, subdivision (d), as valid bases for ordering Brewer to submit DNA samples. The court reached this conclusion on the basis of Brewer's previous conviction for the qualifying offense of sexual battery. (See § 296, subd. (a)(1)(F).)

As this appeal solely presents an issue of statutory interpretation, our primary task is to determine the Legislature's intent and, in doing so, we turn first to the statutory language. (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148,

863 P.2d 218].) Under the plain meaning test, we give words and phrases used in the statute their ordinary meaning. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299] (*Deukmejian*).) We also presume that the Legislature intended every word of the statutory language to perform a useful function. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906].) If the language is clear and unambiguous, there is no need to look to extrinsic indicia of legislative intent. (*Deukmejian, supra,* 45 Cal.3d at p. 735.) However, this does not prohibit a court from determining whether a statute is internally consistent or whether the literal meaning of the statute is consistent with its legislative purpose. (*Lungren, supra,* 14 Cal.4th at p. 312.)

 Section 296.1, subdivision (c), provides in relevant part as follows: "[a]ny person, including, but not limited to, any juvenile and any person convicted and sentenced to death, life without the possibility of parole, or any life or indeterminate term, who is imprisoned or confined in . . . a county jail . . . after a conviction of any crime, . . . whether or not that crime or offense is one set forth in subdivision (a) of Section 296, shall provide [personal identification samples] . . . as soon as administratively practicable once it has been determined that both of the following apply: [¶] (1) [t]he person has been convicted . . . in California of a qualifying offense . . . [and] [¶] (2) [t]he person's [personal identification samples] are not in the possession of the Department of Justice . . . ." This subdivision expressly indicates that it applies "regardless of when the person was convicted of the qualifying offense . . . ." (§ 296.1, subd. (c).)[4]

We first focus on subdivision (c)'s limited applicability to "[a]ny person . . . who is imprisoned or confined . . . ." (§ 296.1, subd. (c).) The use of the present tense language, "is imprisoned or confined," suggests that section 296.1, subdivision (c), applies to those *currently* imprisoned or confined. "In construing statutes, the use of verb tense by the Legislature is considered significant." (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 776 [72 Cal.Rptr.2d 624, 952 P.2d 641].) In particular, the Legislature's use of present tense language has often been interpreted as indicating an intent to establish "current" requirements. For example, in *People v. Loeun* (1997) 17 Cal.4th 1 [69 Cal.Rptr.2d 776, 947 P.2d 1313], the court interpreted the phrase " '*engage in* or have engaged in a pattern of criminal gang

---

[4]In 2000, the Legislature enacted amendments to section 296.1, subdivision (c)(1), and other portions of the DNA Act. (See Stats. 2000, ch. 823, §§ 1-6.) The current version of section 296.1, subdivision (c)(1) provides as follows: "The person has been convicted *or adjudicated a ward of the court* in California of a qualifying offense . . . ." (Italics added.) The italicized portion of that language was not included in the version of the subdivision in effect when the trial court sentenced Brewer. In any event, that revision to section 296.1, subdivision (c)(1), and the other revisions made by the 2000 amendments have no bearing on the issues presented in this appeal.

activity' " as indicating the Legislature's intent that current criminal conduct can satisfy the statutory requirement for a pattern of criminal gang activity. (*Id.* at p. 10.) Similarly, in *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138 [81 Cal.Rptr.2d 492, 969 P.2d 584], our Supreme Court concluded that the Legislature's use of present tense language in Welfare and Institutions Code section 6600 of the Sexually Violent Predators Act indicates that "the statute clearly requires the trier of fact to find that [a sexually violent predator] is dangerous at the time of commitment." (*Hubbart, supra,* 19 Cal.4th at p. 1162.) The use of the present tense language, "is imprisoned or confined," must therefore mean that one prerequisite to application of section 296.1, subdivision (c), is the requirement that the individual be *currently* imprisoned or confined.

This conclusion is buttressed by the fact that the DNA Act also, at times, uses the past tense. For example, section 296.1, subdivision (c)(1), refers to a person who "has been convicted . . . ." (§ 296.1, subd. (c)(1).) Similarly, section 296.1, subdivision (g), applies to any individual returned to state prison after being released on parole who "at any time *has served*" a term of imprisonment for commission of a qualifying offense. (§ 296.1, subd. (g), italics added.) These uses of past tense language underscore the significance of the use of the present tense in the phrase, "is imprisoned or confined."

Moreover, another subdivision of section 296.1 expressly discusses the court's responsibility when the person "is not incarcerated at the time of sentencing . . . ." (§ 296.1, subd. (a).)[5] This language evidences that the Legislature knew how to provide for this specific situation when that was its intent. (Cf. *City and County of San Francisco v. Farrell* (1982) 32 Cal.3d 47, 56 [184 Cal.Rptr. 713, 648 P.2d 935].) Given the plain meaning of the phrase "is imprisoned or confined," and considering the language used elsewhere in the statute, section 296.1, subdivision (c), must apply only to those individuals *currently* "imprisoned or confined."

Brewer did not satisfy this prerequisite. Brewer had been released on bail for nearly a month when the trial court imposed the disputed condition of probation. California courts generally consider a prisoner released on bail as not confined. (See, e.g., *In re Catalano* (1981) 29 Cal.3d 1, 8 [171 Cal.Rptr. 667, 623 P.2d 228] [noting that a prisoner released on bail is eligible for habeas corpus review even though "not actually confined"]; *In re York* (1995) 9 Cal.4th 1133, 1149 [40 Cal.Rptr.2d 308, 892 P.2d 804] [noting that

---

[5]Section 296.1, subdivision (a), states in relevant part that: "[a]ny person . . . who comes within the provisions of this chapter for an offense set forth in subdivision (a) of Section 296, and who is granted probation, or serves his or her entire term of confinement in a county jail . . . or otherwise bypasses a prison inmate reception center . . . shall . . . prior to physical release from custody, be required to provide [personal identification samples]."

a defendant unable to post bail has no constitutional right to be free from confinement]; *In re Bakke* (1986) 42 Cal.3d 84, 88 [227 Cal.Rptr. 663, 720 P.2d 11] [noting that the release of a defendant granted probation while on bail pending appeal does not suspend any other condition of probation other than the provision for confinement].) In fact, California courts generally treat the terms "bail" and "confinement" as opposites. (See e.g., *People v. Lapaille* (1993) 15 Cal.App.4th 1159, 1164 [19 Cal.Rptr.2d 390] [noting that those defendants unable to post bail spend a longer time confined than those who do]; *People v. Gibbs* (1991) 228 Cal.App.3d 420, 424 [278 Cal.Rptr. 338] [noting that the legislative purpose of § 2900.5 was to eliminate unequal treatment of indigent defendants who remained confined longer due to inability to post bail]; *People v. Alvarez* (1989) 208 Cal.App.3d 567, 574 [256 Cal.Rptr. 289] [noting that the inability to post bond results in a loss of freedom].) Moreover, the plain meaning of "imprison" or "confine" is "to deprive one of his liberty." (Ballentine's Law Dict. (3d ed. 1969) pp. 244 & 593.) Thus, as Brewer was on bail and not deprived of his liberty when the trial court imposed the requirement that he provide DNA samples, he was not "imprisoned or confined" within the meaning of section 296.1, subdivision (c).

Even if we did not interpret "is imprisoned or confined" as limited to *current* confinement, Brewer's 22 days in custody following arrest would not satisfy the requirements of section 296.1, subdivision (c), because his confinement was not "after conviction" as that subdivision also requires. (See § 296.1, subd. (c).) Both the change of plea hearing and the sentencing hearing occurred after Brewer's release from custody.

Nor does it appear that Brewer's confinement was "after conviction" for purposes of section 296.1, subdivision (c), because it followed Brewer's conviction in the 1980's for a qualifying offense. First, the list of offenders to whom the subdivision applies, while not exhaustive, solely identifies individuals confined as a consequence of a conviction. (See § 296.1, subd. (c) [subdivision applies to "[a]ny person, including, but not limited to, any juvenile and any person convicted and sentenced to death, life without the possibility of parole, or any life or indeterminate term . . . ."].) No mention is made of confinement following *arrest*, such as that experienced by Brewer. Second, if the intent was to include *all* confinement, so long as the individual had been convicted at any time in the past, the impact of the statute would be unimaginably broad. We conclude that the phrase "is imprisoned or confined . . . after conviction" must refer to confinement as a

*consequence* of conviction.[6] Therefore, the court could not require Brewer to provide DNA samples under section 296.1, subdivision (c), as he was not "imprisoned or confined . . . after conviction for any crime," as required by that subdivision.

The court's alternative basis for requiring Brewer to submit DNA samples as a condition of probation was section 296.1, subdivision (d). It states in relevant part: "[a]ny person . . . who comes within the provisions of this chapter . . . and who is on probation or parole, shall be required to provide [personal identification samples] . . . if it is determined that the person has not previously provided [them] to law enforcement . . . ." In contrast to section 296.1, subdivision (c), subdivision (d) provides that it applies "regardless of when the crime committed became a qualifying offense . . . ." (§ 296.1, subd. (d).)

Section 296.1, subdivision (d), applies to any person who "comes within" the provisions of section 296, subdivision (a), and who is "on probation or parole." While section 296.1, subdivision (c), expressly indicates that the triggering imprisonment or confinement may follow "conviction of *any* crime . . . whether or not that crime or offense is one set forth in subdivision (a) of Section 296 . . . ." (italics added), section 296.1, subdivision (d), contains no similarly broad language regarding the offense giving rise to the probation or parole identified in it.

Additional differences in language between section 296.1, subdivision (d), and other subdivisions of that statute indicate that the former does not apply when the current conviction is not a qualifying offense. The language at the end of section 296.1, subdivision (c), clearly incorporates qualifying offenses committed in the past, indicating that it applies "regardless of when the person was *convicted* of the qualifying offense." (Italics added.) Similarly, section 296.1, subdivision (g), refers specifically to an individual who "at any time has served a term of imprisonment for committing" a qualifying offense. (§ 296.1, subd. (g).) The concluding language of section 296.1, subdivision (d), is quite different. That language provides that section 296.1, subdivision (d), applies "regardless of when the crime committed became a qualifying offense." This language suggests that subdivision (d) applies when the current offense is a qualifying offense, regardless of when the offense became *defined* as a qualifying offense. Thus, reading the statute as a whole, as we must (see *People v. Thomas* (1992) 4 Cal.4th 206, 210 [14 Cal.Rptr.2d 174, 841 P.2d 159]), we conclude that section 296.1, subdivision (d), applies only when the current conviction is for a qualifying offense.

---

[6]Admittedly, this interpretation of section 296.1, subdivision (c), may leave a loophole in the DNA Act. However, the meaning of the language is patent. Without any clear indication that the Legislature did not intend this result, we are bound by the language of the statute.

Nor do we find any reason to read the statute as applying even when the current conviction is not a qualifying offense, so long as a prior conviction was a qualifying offense. The Assembly Committee on Appropriations, the standing committee charged with the bill's development, expressed concern early in the development of the DNA Act about the general retroactive application of the bill. (See Assem. Com. on Appropriations—Public Safety, Analysis of Assem. Bill No. 1332 (1997-1998 Reg. Sess.) as amended May 1, 1997, at background (1) & (3).) Specifically, the committee was concerned with the logistics of finding qualifying offenders no longer in custody and obtaining personal identification samples from them. (*Ibid.*) The original version of section 296 contained a subdivision (d) that would have provided, in relevant part, as follows: "[t]he fact that a person's conviction . . . for committing a qualifying offense . . . predates the enactment of the DNA . . . data bank program . . . shall not exempt the person from the requirements of this chapter."[7] (See Legis. Counsel's Dig., Assem. Bill No. 1332 (1997-1998 Reg. Sess.) as amended June 24, 1998.)[8] This clause was later deleted. (*Ibid.*) Generally, the rejection of a portion of a proposed bill indicates that the Legislature did not intend the bill to include that provision. (See *Dix v. Superior Court* (1991) 53 Cal.3d 442, 461 [279 Cal.Rptr. 834, 807 P.2d 1063].) Thus, we infer from the removal of this language that the Legislature did not necessarily intend for the statute to apply whenever an individual has committed a qualifying offense at any time in the past.

At oral argument, the People contended that it would defy logic if the DNA Act did not reach individuals who were previously subject to former section 290.2. First, to be clear, former section 290.2 contained no provision for collecting personal identification samples from individuals after they left the jurisdiction of the Department of Corrections. (See Stats. 1996, ch. 917, § 2.) If the individual completed probation or was released from incarceration and completed any subsequent parole without providing the requisite samples, the statute provided no means of collecting, and imposed no continuing obligation to provide, those samples.

We therefore interpret the People as arguing that the Legislature surely intended to provide a means of remedying a past failure to collect samples whenever an individual subject to former section 290.2 again came within the jurisdiction of the Department of Corrections. The People's argument might have some force if former section 290.2 applied to the same set of

---

[7]This provision is not to be confused with the new section 296, subdivision (d), added to the DNA Act in 1999. (See Stats. 1999, ch. 475, § 3.)

[8]California courts consider the Legislative Counsel's Digest to be a proper resource to determine the intent of the Legislature. (*Victoria Groves Five v. Chaffey Joint Union High Sch. Dist.* (1990) 225 Cal.App.3d 1548, 1555 [276 Cal.Rptr. 14].)

offenses as the DNA Act. However, that is not the case. The DNA Act applies to a number of offenses and situations to which former section 290.2 did not apply.

First, unlike the DNA Act, former section 290.2 applied to convictions and did not also apply to individuals "found not guilty by reason of insanity." (Compare Stats. 1996, ch. 917, § 2 with § 296, subd. (a)(1).)

Second, the DNA Act reaches a larger number of offenses than former section 290.2. In addition to the offenses covered by former section 290.2, qualifying offenses under the DNA Act also include "any attempt to commit murder," "[v]oluntary manslaughter in violation of Section 192 or an attempt to commit voluntary manslaughter," "[f]elony spousal abuse in violation of Section 273.5," "[a]ggravated sexual assault of a child in violation of Section 269," "[k]idnapping in violation of subdivisions (a) to (e), inclusive, of Section 207, or Section 208, 209, 209.5 or 210, or an attempt to commit any of these offenses," "[m]ayhem in violation of section 203 or aggravated mayhem in violation of Section 205, or an attempt to commit either of these offenses," and "[t]orture in violation of Section 206 or an attempt to commit torture." (§ 296, subd. (a)(1)(B)-(H).) Thus, contrary to the People's suggestion, it was not simply a matter of extending the DNA Act to individuals who had been subject to, but had avoided application of, former section 290.2, because to impose a retroactive sweep would have extended the DNA Act's requirements to many individuals whose offenses had not previously been considered offenses that triggered the obligation to provide personal identification samples. It was certainly reasonable for the Legislature to decline to do that.

The People also argue that section 296.1, subdivisions (a) and (d), are essentially duplicative if subdivision (d) is interpreted as applying only when the current conviction is for a qualifying offense. The People's argument is wrong for two reasons. First, section 296.1, subdivision (d), applies when an individual "is on probation or parole" whereas section 296.1, subdivision (a), applies to a far broader and different set of circumstances, i.e., when an individual "is *granted* probation, or serves his or her entire term of confinement in a county jail, or is not sentenced to a term of confinement in a state prison facility, or otherwise bypasses a prison inmate reception center maintained by the Department of Corrections." (§ 296.1, subds. (a) & (d), italics added.)

Second, and more importantly, the People's argument ignores the administrative function of section 296.1. That entire section specifically addresses when and where individuals in various situations must provide personal

identification samples. Each subdivision addresses a different set of circumstances. Under subdivision (d), "[t]he person shall have the specimens, samples, and print impressions collected within five calendar days of being notified by a law enforcement agency or other agency authorized by the Department of Justice." (§ 296.1, subd. (d).) However, the individuals identified in subdivision (a) of section 296.1 are situated differently and, thus, collection is addressed in a slightly different way. For individuals in custody, the collection shall occur "as soon as administratively practicable, but in any case, prior to physical release from custody." (§ 296.1, subd. (a).) For individuals who are not incarcerated at the time of sentencing, "the court shall order the person to report within five calendar days . . . for the collection" of the personal identification samples. (§ 296.1, subd. (a).) Thus, section 296.1, subdivision (d), does not replicate section 296.1, subdivision (a), even if we interpret the former as limited in application to individuals on probation or parole for a qualifying offense.

Finally, at oral argument the People contended that section 296.1, subdivisions (e) and (f), apply if the defendant has had a qualifying conviction in the past even if his current conviction is not for a qualifying offense. From this premise, they argue that it makes little sense to impose collection requirements in those instances but not on an individual who has previously been convicted of a qualifying offense but is now on probation or parole for a nonqualifying offense. The People's initial contention is faulty. Subdivision (e) states: "if the offender was convicted of an offense which would qualify as a crime described in subdivision (a) of Section 296, or if the person was convicted of a similar crime under the laws of the United States or any other state." Subdivision (f) states, "persons confined . . . in a federal prison . . . located in California *who are convicted of a qualifying offense . . .* or of a similar crime under the laws of the United States or any other state . . . ." (Italics added.) Both of these sections could be interpreted as applying when the *current* conviction is for a qualifying offense.

Because section 296.1, subdivision (d), does not apply when the current conviction is not a qualifying offense, and Brewer's current conviction for grand theft is not such, section 296.1, subdivision (d), does not apply to him.

The legislative analyses that describe the DNA Act as requiring "testing of persons previously convicted of a qualifying offense" do not affect our conclusion. (See Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1332 (1997-1998 Reg. Sess.) as amended June 24, 1998, com. (2)(f); see also Appropriations Com. Fiscal Summary, Rep. on Assem. Bill No. 1332 (1997-1998 Reg. Sess.) as amended July 28, 1998.) Our interpretation of

section 296.1, subdivision (c), is not inconsistent with this ambiguous description of the reach of the DNA Act.[9] Under our interpretation, section 296.1, subdivision (d), applies to individuals who are on probation or parole for a qualifying offense, even if the conviction occurred prior to enactment of the DNA Act.

In conclusion, neither section 296.1, subdivision (c), nor section 296.1, subdivision (d), applies to Brewer's particular situation. The trial court therefore erred in relying on either of them to require Brewer to submit DNA samples.

## D. *Misapplication of the Statute Was Harmless Error*

Although the trial court relied on the wrong sections of the DNA Act in requiring Brewer's submission of DNA samples as a condition of probation, the error was harmless because the court could have imposed the same requirement under the authority of section 296.2, subdivision (c).

In granting probation, courts have broad discretion to impose conditions which aid in the "reformation and rehabilitation of the probationer." (§ 1203.1, subd. (j); *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120-1121 [43 Cal.Rptr.2d 681, 899 P.2d 67] (*Carbajal*).) "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' " (*People v. Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545] (*Lent*).) If a probation condition serves the statutory purpose of " 'reformation and rehabilitation of the probationer,' " such condition is " 'reasonably related to future criminality' " and will be upheld even if it has no " 'relationship to the crime of which the offender was convicted.' " (*People v. Balestra* (1999) 76 Cal.App.4th 57, 65 [90 Cal.Rptr.2d 77] (*Balestra*).)

In applying the *Lent* criteria, California courts have been primarily concerned with probation conditions that regulate conduct not itself criminal. (See *People v. Birkett* (1999) 21 Cal.4th 226, 235 [87 Cal.Rptr.2d 205, 980 P.2d 912]; *Carbajal, supra*, 10 Cal.4th at p. 1121; *Balestra, supra*, 76 Cal.App.4th at p. 65; *People v. Lopez* (1998) 66 Cal.App.4th 615, 624 [78

---

[9]And, regarding this (or any other) ambiguity in the terminology of the DNA Act, we are still bound by the direction to interpret the statute as favorably to the defendant as possible. (See *People v. Garcia* (1999) 21 Cal.4th 1, 10 [87 Cal.Rptr.2d 114, 980 P.2d 829].)

Cal.Rptr.2d 66]; *People v. Beal* (1997) 60 Cal.App.4th 84, 86 [70 Cal.Rptr.2d 80].) Such is not the case here. Brewer was obligated to provide personal identification samples under section 296.2, subdivision (c), and the failure to provide those samples when required to do so by the DNA Act is a misdemeanor offense (§ 298.1).[10]

Section 296.2, subdivision (c), states in relevant part that "[a]ny person who is required to register under Section 290 . . . who has not provided the [personal identification samples] for any reason including the release of the person prior to the enactment of the state's DNA . . . data bank program . . . , [shall] as an additional requirement of registration or of updating his . . . annual registration . . . give [personal identification samples] . . . . [¶] . . . [¶] If, prior to the time of the annual registration update, a person is notified by . . . [an] officer of the court, that he . . . is subject to this chapter, then the person shall provide the [personal identification samples] . . . within 10 calendar days of the notification . . . ." (§ 296.2, subd. (c).) Section 290 requires the registration of all individuals convicted of specified sex-related crimes, including sexual battery. (§ 290, subd. (a)(2)(A).) Therefore, under section 290, Brewer was required to register annually and whenever he moved. (See § 290, subds. (a)(1)(A) & (a)(1)(C).) It is unclear from the record whether Brewer ever did so. However, section 296.2, subdivision (c), applies to him whether he had in fact so registered or not. (§ 296.2, subd. (c).) If Brewer had not yet registered under section 290, his registration as well as the submission of his personal identification samples would have been immediately required. (See §§ 290, subd. (a)(1) & 296.2, subd. (c).) If Brewer had registered under section 290, he had 10 days to provide personal identification samples after receiving notice from the trial court of his obligation under the DNA Act. (§ 296.2, subd. (c).)

Thus, the trial court acted within its discretion in ordering Brewer to comply with his legal obligations under the DNA Act as a condition of his probation. Although the condition was not directly related to the underlying crime, it was reasonably related to Brewer's future rehabilitation into society by bringing him into compliance with the law and by preventing his "future criminality," namely, the misdemeanor offense of failing to comply with the DNA Act (see § 298.1). The fact that the trial court cited incorrect authority for the condition was, therefore, harmless error.

---

[10]Section 298.1 states in relevant part: "any person who refuses to give [personal identification samples] as required by this chapter, once he . . . has received written notice from . . . [an] officer of the court that he . . . is required to provide [personal identification samples] . . . is guilty of a misdemeanor."

## IV. DISPOSITION

The judgment is affirmed.

Kline, P. J., and Lambden, J., concurred.