Filed 12/20/13  P. v. Morales CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B246491 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BA372812) |
| GEORGE MORALES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  William C. Ryan, Judge.  Affirmed.

H. Russell Halpern for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Following the denial of a motion to suppress, George Morales pled no contest to forcible sex crimes committed in April 1995. Morales was identified as the perpetrator when DNA from a buccal swab[1] established a cold hit through a DNA database linking him to the crimes. In the motion to suppress, Morales claimed the buccal swab DNA sample was taken in violation of section 296.1 of the Penal Code[2] and the Fourth Amendment of the United States Constitution and the California Constitution. He alternatively claims section 296.1 violates the Fourth Amendment and the California Constitution. We disagree and affirm.

## FACTS

On December 12, 2009, Morales was arrested in San Bernardino County for the misdemeanor offense of driving with a suspended license. At the time of arrest, Morales was on probation for driving with a suspended license. In addition, Morales had suffered a prior felony juvenile adjudication in 1980 for burglary (§ 459) and two prior felony convictions in 1984 for assault with a firearm (§ 245, subd. (b)) and receiving stolen property (§ 496).

While Morales was in custody at the police station, the police collected DNA from a buccal swab without a search warrant. Morales' DNA profile was uploaded into the FBI's Combined DNA Index System database. In February 2010, a DNA match was made to an unsolved 1995 "cold case." Based on the DNA match, police conducted surveillance on Morales. A second DNA sample was collected after Morales spat on the ground.

Based on the DNA match, Morales was charged with kidnapping to commit another crime (§ 209, subd. (b)(1)), forcible oral copulation (§ 288a, subd. (c)), sodomy by force (§ 286, subd. (c)), and forcible rape (§ 261, subd. (a)(2)). The information alleged the offenses were committed on or about April 27, 1995. After his motion to

---

[1]    A buccal swab is a cotton swab or filter paper applied to the inside of the mouth on the cheek. A DNA sample is then obtained from the buccal swab.

[2]    All further section references are to the Penal Code.

2

suppress was denied, Morales plead no contest to two of the 1995 sex crimes. The trial court sentenced Morales to 37 years in state prison. He filed a timely appeal.

## DISCUSSION

Morales contends the trial court erred in denying his motion to suppress evidence. He argues the buccal swab DNA sample was taken in violation of section 296.1, the Fourth Amendment and the California Constitution. Further, he argues that section 296.1 itself is unconstitutional. We disagree.

In the trial court, Morales argued that the police were not authorized to collect his DNA under section 296.1 because he was not arrested for a felony nor in custody for a prior felony conviction, but was arrested on a "non-qualifying" misdemeanor. The prosecutor argued that in light of Morales' prior felony convictions, he was required to submit to the taking of a buccal swab DNA sample pursuant to section 296.1 when he was lawfully arrested.[3] Further, that as a convicted felon, Morales had no expectation of privacy concerning his identity, and any privacy rights he had concerning his DNA profile were outweighed by the government's interest in solving crimes. The trial court denied Morales' motion to suppress.

### *The Statutory Issue*

Morales contends the taking of the buccal swab DNA sample violated the statutory requirements of section 296.1.[4] We find his claim lacks merit.

Section 296, subdivision (a), describes the persons who are subject to mandatory collection ("shall provide") of buccal swab DNA samples in this state. Subdivision (a)(1) provides that "[a]ny person . . . who is convicted of or pleads guilty or no contest to *any* felony offense . . . (italics added)" is subject to collection of buccal swab samples.

---

[3] The District Attorney did not raise Morales' probationary status in the trial court. We discuss this issue below.

[4] In his motion to suppress evidence, Morales contested the DNA sample from his saliva on the street as fruit of the original wrongful DNA search. He does not expressly raise that argument on appeal.

Thus, once a person is *convicted of any felony offense* in this state, he or she becomes subject to the collection of a buccal swab DNA sample.[5]  Under subdivision (a)(2), any person who is arrested for certain identified offenses (sex registration crimes or murder or voluntary manslaughter or attempted murder or voluntary manslaughter) is subject to collection of a buccal swab DNA sample.

Section 296.1 prescribes the procedures for collecting such specimens. Section 296.1, subdivision (a), reads:  "The  . . . samples . . . required by this chapter shall be collected from persons described in subdivision (a) of Section 296 for present and past qualifying offenses of record as follows: . . . ."  Section 296.1, subdivision (a)(3)(A), reads:

> "Any person . . . *[1] who has a record of any past or present conviction or adjudication for an offense set forth in subdivision (a) of Section 296, and [2] who is on probation . . . for any felony or misdemeanor offense, [3] whether or not that crime or offense is one set forth in subdivision (a) of Section 296*, shall provide buccal swab samples . . . pursuant to this chapter, if:
> "(i)  The person has a record of any past or present conviction or adjudication as a ward of the court in California of a qualifying offense described in subdivision (a) of Section 296 or has a record of any past or present conviction or adjudication in any other court, including any state, federal, or military court, of any offense that, if committed or attempted in this state, would have been punishable as an offense described in subdivision (a) of Section 296; and
> "(ii)  The person's . . . buccal swab samples . . .  authorized by this chapter are not in the possession of the Department of Justice DNA Laboratory or have not been recorded as part of the department's DNA databank program."  (Italics added.)

---

[5]  Section 296 was enacted in 1998.  (Stats. 1998, ch. 696, § 2.)  Morales's prior felony convictions occurred in 1984, before the implementation of the statutory scheme for the collection of buccal swab DNA samples.  Morales's current case implicates the timing of the collection of his DNA sample as a convicted felon.  Here, the collection occurred in 2009 based on 1984 convictions.

Morales falls within these statutory provisions. When the police collected his buccal swab in December 2009, he had two prior felony convictions and a prior felony juvenile adjudication, and he was on probation for a misdemeanor. Morales's criminal history, i.e. his status facts, satisfy section 296.1, subdivision (a)(3)(A)(i), and his arguments to the contrary do not explain away that he falls within the reach of the statutory language.[6] His arguments in the trial court and appeal concerning the offense for which he was arrested in December 2009 do not trump the language of section 296.1, subdivision (a)(3)(A).

Morales relies on *People v Brewer* (2001) 87 Cal.App.4th 1298 for a contrary result. He is misguided in doing so. *Brewer* interpreted prior versions of section 296 and 296.1 which were more narrow; they have since been broadened by the voters' passage of Proposition 69 in 2004.

---

[6] In the trial court, the prosecutor argued the buccal swab was properly collected based on the fact that Morales was previously convicted of a qualifying felony, without reference to the fact that Morales was also on probation for a misdemeanor offense, as provided in the subdivision we noted above. Technically, the prosecutor was correct in that Morales had the status of a convicted felon. Our focus in this case, however, is on the implementation of collection procedures under section 296.1. In the lower court, defense counsel argued that Morales did not fall within the purview of any procedure in section 296.1. Owing to the fact that defense counsel brought the court's attention to the provision upon which we have noted, and given that the facts admitted at the hearing contained records which demonstrated that Morales was on misdemeanor probation, we do not believe our resolution of the case raises a new theory not raised below. Even if it did, we would still affirm. (*Green v. Superior Court* (1985) 40 Cal.3d 126, 138-139; *People v. Nottoli* (2011) 199 Cal.App.4th 531, 561, fn. 14 ["To *affirm* a trial court's suppression ruling, . . . reviewing courts may rely on a new theory that was not raised below '[w]hen . . . the record fully establishes another basis for affirming the trial court's ruling and there does not appear to be any further evidence that could have been introduced to defeat the theory.'"].) As we have noted, the record here contains Morales' criminal history which clearly show that he was on probation at the time of arrest. There is no further evidence that could have been introduced to defeat this theory. Morales' probation did not expire until March 15, 2010, after the date his buccal swab was taken.

*The Constitutional Issues*

Morales next asserts that section 296.1 violates the Fourth Amendment. His opening brief on appeal relied on the reasoning of *People v. Buza* (2011) 197 Cal.App.4th 1424 (rev. granted, Oct. 19, 2011, S196200), which was pending in our State Supreme Court when he filed his brief. *Buza* has since been transferred back to the Court of Appeal following *Maryland v. King* (2013) ___ U.S. ___; 133 S.Ct. 1958 (*King*). In *King*, the United States Supreme Court ruled that the nonconsensual collection of DNA samples from a person who is *arrested* for a serious felony offense is permissible under the Fourth Amendment. Even before *King*, the California Supreme Court sanctioned nonconsensual collection of DNA samples in our state from a *convicted felon in lawful custody*. (*People v. Robinson* (2010) 47 Cal.4th 1104, 1123.)

*King* is instructive in Morales's current case, where a DNA sample was collected from a person with the status of a convicted felon, who, at the time of collection, was on probation for a misdemeanor, and in lawful custody for a misdemeanor. In *King*, Alonzo King was arrested in 2009 and charged with first and second degree assault for menacing a group of people with a shot gun. (*King*, *supra*, 133 S.Ct. at p. 1965.) As part of a routine booking procedure for serious offenses, King's DNA sample was taken via buccal swab. This DNA sample matched King with a 2003 cold case where a man concealing his face and armed with a gun broke into a woman's home in Salisbury, Maryland and raped her. (*Ibid.*) King filed a motion to suppress evidence, and the trial judge denied the motion. (*Id.* at p. 1962.) He was subsequently convicted of rape, which he appealed. (*Ibid*.)

The issue before the United States Supreme Court was whether the taking of a buccal swab for DNA identification purposes violated King's Fourth Amendment rights as an unreasonable search of a person. (*King, supra,* 133 S.Ct at pp. 1965-1966.) Under Maryland law, Maryland's law enforcement is authorized to collect DNA samples from a person who is "charged" with a crime "of violence or an attempt to commit a crime of violence; or . . . burglary or an attempt to commit burglary." (Md. Pub. Saf. Code Ann. § 2-504(a)(3)(i) (Lexis 2011).) Under this law, once a DNA sample is taken,

6

it is processed or placed in a database, unless the charges are unsupported by probable cause, then the DNA sample is destroyed. (*King*, *supra*, 133 S.Ct at p. 1967.) Any DNA sample's use is restricted to identification purposes only. (*Ibid.*)

In *King*, the court held the search was taken in the context of an arrest, and, thus, "respondent's expectations of privacy were not offended by the minor intrusion of a brief swab of his cheeks." (*King, supra,* at p. 1980.) Further, the court held that the state had significant interest in obtaining the DNA identification in order for the appropriate person to be connected with the charges, and also to ensure that law enforcement and others in the criminal justice system could make informed decisions concerning pretrial custody. (*Ibid.*) Considering the minor intrusiveness, the significant state interest, and the procedural safeguards,[7] the court concluded that the "DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure. When officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, *taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment.*" (*Id.* at p. 1980, italics added.)

We find the reasoning and result in *King* applies to Morales' case. He was under misdemeanor arrest, he was on misdemeanor probation, and he had a prior felony conviction history. Before being released, police collected a buccal swab within the parameters of sections 296 and 296.1. Here, there was a similar state interest as existed in *King* in identifying and charging the arrestee, i.e., Morales. And, as in *King*, the collection of DNA samples under California's statutory scheme is limited for identification purposes and is "an administrative requirement to assist in the accurate identification of criminal offenders." (§ 295, subd. (d).) Similar to *King*, safeguards are

---

[7] The court outlined the safeguards in place regarding use of the DNA sample including *inter alia* the fact that it was limited to identification only, it would be destroyed if probable cause was not found, and it was forbidden to test for familial matches. (*King*, *supra*, 133 S.Ct. at p. 1965.)

provided, including destruction of the sample if the person does not have a qualifying past or present offense or pending charge, in order to ensure that the DNA sample is only used for identification purposes. (§ 299.) As was held in *King*, the taking of the buccal swab under California's DNA statutes is like fingerprinting or photographing, a legitimate police administrative requirement or booking procedure, which is reasonable under the Fourth Amendment.

The difference between *King* and this case is that Morales was not arrested for a serious offense but instead for a misdemeanor offense – driving without a license. But, Morales' DNA was not collected simply based on his misdemeanor arrest. Instead, it was collected because he was on misdemeanor probation and had previous felony convictions. Given his prior criminal history, it is not a quantum leap to find Morales presented the same concerns as the person arrested for a serious felony in *King*. The point of collection in Morales's DNA sample did not violate his constitutional rights.

As the United States Supreme Court explained in *King*: "A person who is arrested for one offense but knows that he has yet to answer for some past crime may be more inclined to flee the instant charges, lest continued contact with the criminal justice system expose one or more other serious offenses. For example, a defendant who had committed a prior sexual assault might be inclined to flee on a burglary charge, knowing that in every State a DNA sample would be taken from him after his conviction on the burglary charge that would tie him to the more serious charge of rape. In addition to subverting the administration of justice with respect to the crime of arrest, this ties back to the interest in safety; for a detainee who absconds from custody presents a risk to law enforcement officers, other detainees, victims of previous crimes, witnesses, and society at large. . . . DNA identification of a suspect in a violent crime provides critical information to the police and judicial officials in making a determination of the arrestee's future dangerousness. This inquiry always has entailed some scrutiny beyond the name on the defendant's driver's license." (*King, supra,* 133 S.Ct at p. 1973.)

The concerns expressed by the United States Supreme Court in *King* could be said to be prescient of the facts of this case — Morales was a defendant under arrest for a fairly minor misdemeanor offense, but must have known that he had not yet answered for his past sex crimes. He inherently posed risks for flight or trying to misidentify himself in an effort to cut short his contact with the criminal justice system.

Finally, because the collection of the DNA sample under section 296.1 did not violate the Fourth Amendment, we will not find it should have been excluded under the California Constitution. It is well established that a trial court may only exclude evidence under section 1538.5 when it is mandated by the federal Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 896.) Having found that the search was appropriate under the Fourth Amendment, we find no state constitutional basis for suppressing the buccal swab evidence.

**DISPOSITION**

The judgment is affirmed.

BIGELOW, P. J.

We concur:

RUBIN, J.

GRIMES, J.

9