[No. A117317. First Dist., Div. One. Jan. 16, 2008.]

SYLVER DEAN GOOD, Petitioner, v.
THE SUPERIOR COURT OF HUMBOLDT COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Kevin S. Robinson, Public Defender, and Michael E. Eannarino, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Stan Helfman and Enid A. Camps, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**MARCHIANO, P. J.**—Proposition 69, the DNA Fingerprint, Unsolved Crime and Innocence Protection Act of 2004, substantially expanded the range of persons who must submit DNA samples to the state's forensic identification databank. The expansion included misdemeanants who must

register as sex offenders pursuant to Penal Code former section 290.[1] In this case we hold that Proposition 69 requires misdemeanants who must register as sex offenders to provide DNA samples, regardless of whether the conviction triggering the registration requirement occurred before or after the 2004 passage of Proposition 69.

## I. FACTUAL & PROCEDURAL BACKGROUND

Petitioner Sylver Dean Good was convicted of indecent exposure (§ 314, subd. (1)), a misdemeanor, in 1996.[2] Because of this conviction, Good has an ongoing lifetime obligation to annually register as a sex offender under the Sex Offender Registration Act, and to update his registration whenever he changes his residence. (§§ 290, subds. (b) & (c), 290.012, subd. (a), 290.013, subd. (a).)[3]

At the time of Good's conviction, collection of DNA samples was governed by former section 290.2, which only required DNA samples from defendants who were required to register as sex offenders because of convictions for certain felonies, and who were confined in a state prison or a state hospital. (Former § 290.2, added by Stats. 1983, ch. 700, § 1, pp. 2680–2681 and repealed by Stats. 1998, ch. 696, § 1; see *Alfaro v. Terhune* (2002) 98 Cal.App.4th 492, 497–498 [120 Cal.Rptr.2d 197].) Thus, at the time of his 1996 conviction Good was required to register as a sex offender, but was not required to provide a DNA sample.

Good successfully completed a three-year term of probation in 1999, but was required to register as a sex offender annually.

As we shall discuss further below, the 2004 passage of Proposition 69 changed the law to mandate that all persons required to register as sex offenders, misdemeanants as well as felons, submit DNA samples. On September 20, 2005, the Eureka Police Department sent Good a letter directing him to report to the department and submit a DNA sample.

---

[1] Subsequent statutory references are to the Penal Code.

By urgency legislation effective October 13, 2007, former section 290 was repealed and replaced with sections 290 through 290.023, inclusive, which shall be known as the Sex Offender Registration Act. (Stats. 2007, ch. 579, §§ 7–31.)

[2] The crime had to have been Good's first offense, as a second offense under the statute is a felony. (§ 314, subd. (2).)

[3] Indecent exposure was included in former section 290 at the time Good was convicted. (Stats. 1995, ch. 85, § 1, p. 211; Stats. 1995, ch. 91, § 120, pp. 341–342; Stats. 1995, ch. 840, § 2, p. 6390.)

Good filed a motion for declaratory relief in the trial court, arguing the change in the law was not retroactive to his 1996 conviction. The trial court denied relief, ruling that Proposition 69 applied to Good and required him to submit a DNA sample. Good filed a petition for writ of mandate/prohibition with the appellate division of the superior court. The appellate division denied the petition, rejecting Good's retroactivity argument as follows: "The difficulty with [Good's] argument is that it assumes that the operative factor in requiring provision of the [DNA] samples is the conviction. Such is not the case. Rather, *it is the present requirement to register under . . . [former] section 290 that is the operative fact giving rise to the requirement to submit to sample collection.*" (Italics added.)

Good petitioned this court for a writ of prohibition. We issued a stay and an order to show cause, and the People have filed a return.

## II. STATUTORY BACKGROUND

As we have noted, DNA sample collection at the time of Good's 1996 conviction was limited to defendants who were required to register as sex offenders because of convictions for certain felonies, and who were confined in a state prison or a state hospital. There have been two subsequent significant expansions of DNA sample collection: by legislative enactment in 1998 and by initiative, Proposition 69, in 2004.

### A. The 1998 Legislation

The DNA and Forensic Identification Database and Data Bank Act of 1998 (Stats. 1998, ch. 696, § 2) (Act) added section 295 et seq. to the Penal Code. One of the "primary reasons" for the Act "was the desire to close loopholes" in former section 290.2. (*People v. Brewer* (2001) 87 Cal.App.4th 1298, 1301 [105 Cal.Rptr.2d 293] (*Brewer*).) The Act "was intended to reach a broader class of offenders and apply regardless of the sentence imposed or the disposition rendered. [Citation.]" (*Brewer, supra,* at p. 1302.) The Act required DNA samples from defendants convicted of a number of listed felony offenses, as well as defendants required to register for a felony sex offense pursuant to former section 290.

The Act contained clear statements of legislative purpose in section 295. In section 295, subdivision (b)(1), the Legislature found and declared that "Deoxyribonucleic acid (DNA) and forensic identification analysis is a useful law enforcement tool for identifying and prosecuting sexual and

violent offenders." (Stats. 1998, ch. 696, § 2.) Subdivision (b)(3) of section 295 stated that the Act was "necessary . . . to enable the state's DNA and forensic identification data base and data bank program to become a more effective law enforcement tool."

Subdivision (b)(2) of section 295 stated that it was the intent of the Legislature, "in order to further the purposes of [the Act], to require DNA and forensic identification data bank samples for the felony offenses described in subdivision (a) of Section 296." (Stats. 1998, ch. 696, § 2.)

These felonies, known as "qualifying offenses," were listed in section 296, subdivision (a)(1). They included murder, voluntary manslaughter, felony spousal abuse, felony assault or battery, and kidnapping. (Stats. 1998, ch. 696, § 2; see *Brewer, supra,* 87 Cal.App.4th at p. 1302.)

The Act retained the prior law's requirement for DNA samples from felony sex offenders. Section 296, subdivision (a)(2) mandated DNA samples from defendants who had to register as a sex offender "because of the commission of . . . a felony offense specified in [former] Section 290 . . ." and who are confined, granted probation, or released from a state hospital. (Stats. 1998, ch. 696, § 2.)

Section 296 "contemplate[d] that submission to testing will occur as soon as administratively practicable, regardless of the type of confinement [citation] . . . ." (*Brewer, supra,* 87 Cal.App.4th at p. 1302.)

To that end, section 296.1 set forth administrative procedures for sample collection from certain basic categories of offenders: those sentenced to state prison; those not sentenced to state prison, but instead placed on probation or committed to a county jail; those on parole; those who have violated parole and are returned to prison; those accepted from other states pursuant to an interstate compact; and those incarcerated in federal institutions inside California. (Stats. 1998, ch. 696, § 2.)

Section 296.2 also set forth administrative procedures. Subdivision (a) involved replacement of inadequate samples. Subdivision (b) formally authorized the DNA Laboratory of the Department of Justice to analyze submitted samples. Subdivision (c) involved registered felony sex offenders, and provided that such offenders who had not yet submitted a sample were to receive an appointment for sample collection when they registered or updated their registration. (Stats. 1998, ch. 696, § 2.)

Division Two of this court interpreted key provisions of the Act in the 2001 *Brewer* decision. The defendant in *Brewer* had been convicted of sexual battery and served a prison term for that offense from May 1987 to May 1989. (*Brewer, supra,* 87 Cal.App.4th at p. 1301.) Over 10 years later, in December 1999, he pleaded no contest to grand theft and was placed on three years' probation. As a condition of probation, the trial court ordered the defendant to submit DNA samples under the provisions of the Act. (87 Cal.App.4th at p. 1301.)

Defendant Brewer's past offense of sexual battery was a qualifying offense under the Act; his current offense of grand theft was not. But the trial court imposed the DNA sample requirement under the purported authority of section 296.1, subdivision (d), which required samples from a defendant "who comes within [the Act] for an offense set forth in subdivision (a) of Section 296, and who is on probation or parole . . . ." (Stats. 1998, ch. 696, § 2.)

By its express terms, section 296.1, subdivision (d) "shall apply regardless of when the crime committed became a qualifying offense pursuant to [the Act]." (Stats. 1998, ch. 696, § 2.) Interpreting this sentence, and noting its language was narrower in scope than a related provision of the Act, the *Brewer* court concluded that "subdivision (d) applies when the current offense is a qualifying offense, regardless of when the offense became *defined* as a qualifying offense. Thus, reading the statute as a whole . . . we conclude that section 296.1, subdivision (d), applies only when the current conviction is for a qualifying offense." (*Brewer, supra,* 87 Cal.App.4th at p. 1307.)[4]

The court also concluded that legislative history showed that section 296.1, subdivision (d) should not apply when the current conviction is not a qualifying offense, but the defendant has a prior conviction which is a qualifying offense—i.e., that the subdivision should not in essence apply retroactively to past behavior which led to a conviction of a qualifying offense under the Act. (*Brewer, supra,* 87 Cal.App.4th at p. 1308.)

"The Assembly Committee on Appropriations, the standing committee charged with the bill's development, expressed concern early in the development of the . . . Act about the general retroactive application of the bill. [Citation.] Specifically, the committee was concerned with the logistics of finding qualifying offenders no longer in custody and obtaining personal

---

[4] The court compared the language of section 296.1, subdivision (d) with the broader language of section 296.1, subdivision (c), which was also relied upon by the trial court but which the *Brewer* court held inapplicable for various reasons we need not discuss. (*Brewer, supra,* 87 Cal.App.4th at pp. 1304–1307.)

identification samples from them. [Citation.]" (*Brewer, supra,* 87 Cal.App.4th at p. 1308.) The court noted that the original version of section 296.1, subdivision (d) contained a clause which expressly applied the subdivision to convictions for qualifying offenses which predated the Act. That clause was deleted. The *Brewer* court concluded "from the removal of this language that the Legislature did not necessarily intend for the statute to apply whenever an individual has committed a qualifying offense at any time in the past." (*Brewer, supra,* at p. 1308.)

The Act remained substantially unchanged until 2004.[5]

### B.   The 2004 Initiative (Proposition 69)

The voters of this state approved Proposition 69 on November 2, 2004. Proposition 69 made significant amendments to the Act and was an urgent law that became immediately effective on November 3, 2004.

The legislative findings and intent set forth in section 295, subdivision (b)(1), (2) and (3) became those of the people of the State of California. In particular, section 295, subdivision (b)(2) was amended as follows: "It is the intent of the people of the State of California, in order to further the purposes of [the Act], to require DNA and forensic identification data bank samples from all persons, including juveniles, for the felony *and misdemeanor* offenses described in subdivision (a) of Section 296." (Italics added.) The expressed purpose was to assist law enforcement in the expeditious and accurate detection of those responsible for sex offenses and other crimes. (§ 295, subd. (c).)

Proposition 69 amended section 296, subdivision (a) to substantially broaden the scope of DNA sample collection. The new subdivision (a)(1) requires DNA samples from any adult or juvenile convicted of *any* felony offense, not just the listed offenses in the prior law. (See *People v. Travis* (2006) 139 Cal.App.4th 1271, 1278 [44 Cal.Rptr.3d 177] (*Travis*).)[6] The new subdivision (a)(2) requires samples from any adult *arrested for or charged with* felony sex offenses requiring registration; murder or voluntary manslaughter or the attempt thereof; and, beginning in 2009, any felony offense.

---

[5] There were minor legislative amendments to sections 295, 296, and 296.1 between 1998 and 2004. (Stats. 1999, ch. 475, § 3; Stats. 2000, ch. 135, § 132; Stats. 2000, ch. 823, §§ 1, 2; Stats. 2001, ch. 906, § 1; Stats. 2002, ch. 160, § 1; Stats. 2002, ch. 916, § 1.) These amendments do not concern the issue raised in this proceeding.

[6] For the purposes of this discussion, and for simplicity of style, we use the terminology of adult criminal proceedings. We understand, of course, that juvenile delinquency proceedings employ different terminology, such as "adjudication" rather than "conviction."

The new section 296, subdivision (a)(3), an amended version of former subdivision (a)(2), added misdemeanant sex offenders to the universe of defendants required to submit DNA samples.[7] The statute requires samples from "Any person, including any juvenile, who is required to register under [former] Section 290 or 457.1 *because of the commission of, or the attempt to commit, a felony or misdemeanor offense . . . ."* (Italics added.) New subdivision (a)(3) also deleted the requirement that the registrant be confined, on probation, or released from a state hospital.

█ Former section 296.1 was substantially rewritten and restructured. New section 296.1, subdivision (a), sets forth administrative procedures for sample collection from six categories of offenders: (1) adults arrested for felonies (subd. (a)(1)); (2) defendants confined after conviction (subd. (a)(2)); (3) defendants on probation, parole or other release (subd. (a)(3)); (4) parole violators and others returned to custody (subd. (a)(4)); (5) defendants accepted into California from other jurisdictions (subd. (a)(5)); and (6) defendants in federal institutions (subd. (a)(6)).

With a clear intent to countermand *Brewer,* Proposition 69 made section 296.1, subdivision (a), expressly retroactive. As enacted, section 296.1, subdivision (b)(1) stated: "Subdivision (a) and all of its paragraphs shall have retroactive application. Collection shall occur pursuant to paragraphs (1), (2), (3), (4), (5), and (6) of subdivision (a) regardless of when the crime charged or committed became a qualifying offense pursuant to [the Act], and regardless of when the person was convicted of the qualifying offense described in subdivision (a) of Section 296 . . . ."

Section 296.1, subdivision (b) was amended in 2006 to delete references to paragraph (1) of subdivision (a). (Stats. 2006, ch. 170, § 1.) Subdivision (b) currently provides that "Paragraphs (2), (3), (4), (5), and (6) of subdivision (a) shall have retroactive application. Collection shall occur pursuant to paragraphs (2), (3), (4), (5), and (6) of subdivision (a) regardless of when the crime charged or committed became a qualifying offense pursuant to [the Act], and regardless of when the person was convicted of the qualifying offense described in subdivision (a) of Section 296 . . . ."

Thus, the administrative procedures for collection of DNA samples from five major categories of offenders, those confined after conviction, on probation or parole, parole violators returned to custody, defendants accepted from other states, and defendants in federal prisons, are expressly retroactive.

---

[7] In this opinion, we use "misdemeanant sex offenders" interchangeably with "misdemeanants required to register as a sex offender."

Proposition 69 did not amend section 296.2, which involves (in subd. (c)) administrative procedures for defendants required to register for felony sex offenses. On its face, section 296.2, subdivision (c) applies only to felons and not to misdemeanant sex offenders.[8]

## III. DISCUSSION

As we construe petitioner Good's argument, he contends that section 296.2 does not apply to him because he is not a felon; section 296.1 is expressly retroactive, but also does not apply to him; and, by contrast, the Legislature did not make section 296 expressly retroactive. Thus, Good concludes, new section 296, subdivision (a)(3) (section 296(a)(3)) does not apply to him and he is not required to give a DNA sample because of his 1996 conviction.

We disagree. Our interpretation of the language of the pertinent provisions of Proposition 69, in the context of the statutory purpose, leads us to conclude that the electorate intended misdemeanant sex offenders to submit DNA samples regardless of the date of their misdemeanor conviction. Accordingly, we deny the petition.[9]

We review de novo a question of statutory interpretation. (*Argaman v. Ratan* (1999) 73 Cal.App.4th 1173, 1176 [86 Cal.Rptr.2d 917].)

"The fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.]" (*O'Kane v. Irvine* (1996) 47 Cal.App.4th 207, 211 [54 Cal.Rptr.2d 549].) "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. [Cita-

---

[8] Section 296.2, subdivision (c) provides, in pertinent part: "Any person who is required to register under under the Sex Offender Registration Act who has not provided the . . . [DNA] samples . . . described in [the Act] for any reason . . . as an additional requirement of registration or of updating his or her annual registration pursuant to the Sex Offender Registration Act shall give . . . [DNA] samples . . . for inclusion in the state's DNA and forensic identification database and databank."

"At the time the person registers or updates his or her registration, he or she shall receive an appointment designating a time and place for the collection of the . . . [DNA] samples . . . if he or she has not already complied with the provisions of [the Act]."

[9] We reject the People's argument that the petition should be denied as untimely because it was filed more than 60 days after the appellate division's order. There is no statutory time limit for most writ petitions. A filing period of 60 days is typically recognized, but a petition filed after 60 days will not be denied unless the respondent can show prejudice. (See *Peterson v. Superior Court* (1982) 31 Cal.3d 147, 163 [181 Cal.Rptr. 784, 642 P.2d 1305]; *People v. Superior Court (Lopez)* (2005) 125 Cal.App.4th 1558, 1562 [24 Cal.Rptr.3d 66].) The People can show no prejudice here.

tions.]" (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) Other courts refer to the "plain and commonsense meaning" of statutory language. (*People v. Cole* (2006) 38 Cal.4th 964, 975 [44 Cal.Rptr.3d 261, 135 P.3d 669] (*Cole*); see *People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].)

"We do not, however, consider the statutory language in isolation; rather, we look to the entire substance of the statutes in order to determine their scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statutes' nature and obvious purposes. [Citation.] We must harmonize the various parts of the enactments by considering them in the context of the statutory frame work as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history. [Citation.]" (*Cole, supra,* 38 Cal.4th at p. 975.)[10]

We agree that Proposition 69 could be subject to two interpretations on the issue before us. On the one hand, as the People maintain, the plain language of section 296(a)(3) applies to "any person" who "is required" to register as a sex offender because of the commission of a misdemeanor. The use of the present tense speaks to the *current* requirement to register. (See *Brewer, supra,* 87 Cal.App.4th at p. 1305.) This current (and ongoing) requirement flows from Good's conviction, despite the conviction's predating Proposition 69 and is an administrative requirement to carry out the purpose of Proposition 69 to secure a current, comprehensive database.

On the other hand, the lack of express retroactivity in section 296, contrasted with the express retroactivity in section 296.1, might suggest that the addition of misdemeanors to section 296(a)(3) was not meant to be retroactive—since the statute governing the administrative procedures for felon sex registrants, section 296.2, was not amended to include misdemeanant sex offenders.

But viewing the statutory language in the context of the statutory purpose, with due regard to the nature and purpose of sex offender registration, we conclude that the People's interpretation must prevail.

---

[10] These rules of statutory construction apply to initiative measures as well as legislative enactments. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1212 [246 Cal.Rptr. 629, 753 P.2d 585]; see *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 244–246 [149 Cal.Rptr. 239, 583 P.2d 1281].)

First, section 296 must be viewed not in isolation, but in the context of the entire statutory framework. Section 296 specifies the qualifying offenses which require defendants to submit samples. The retroactivity provision of section 296.1 (subdivision b) integrates section 296 by stating that the bulk of the provisions of subdivision (a) apply "regardless of when the person was convicted of the qualifying offense described in subdivision (a) of Section 296." Thus, by this provision, Proposition 69 contemplates that the provisions of new section 296 will be retroactive in effect, and not merely forward looking. We thus conclude that Good's emphasis on the lack of express retroactivity in section 296 lacks persuasiveness when viewed in the context of section 296.1, subdivision (b).

In our view, the controlling provision of Proposition 69 is section 296, which authorized DNA sample collection from listed categories of offenders. Section 296.1 is merely a provision to implement the goals of section 296. Section 296.1, both before and after Proposition 69, dealt only with the mechanics of obtaining DNA samples from defendants in various conditions of confinement or under direct supervision. The wording of section 296.1 is somewhat complex, and provides for the implementation of sample collection in the context of institutional and other systemic realities.

For instance, paragraph (2) of section 296.1, subdivision (a) requires sample collection from state prison inmates "immediately at intake, or during the prison reception center process, or as soon as administratively practicable at the appropriate custodial or receiving institution." Paragraph (3) of subdivision (a) requires sample collection from probationers and parolees "within five calendar days of being notified by the court, or a law enforcement agency or other agency authorized by the Department of Justice." The samples "shall be collected . . . at a county jail facility or a city, state, local, private, or other facility designated for this collection." Paragraph (5) of subdivision (a) requires collection from inmates received from other states by a two-tiered system, depending on whether the inmate is confined or released on supervision.

Section 296.1 does not deal with sex offender registrants, and never did. In contrast to a defendant in confinement or under supervision, a sex offender registrant generally enjoys a certain freedom of movement—but must report to register at least once a year. Given the administrative realities of sex offender registration, a one-time sample collection at the next registration from one required to register annually does not need a statutory directive as do the other more intricate qualifying events set forth in section 296.1— which invoke the realities of institutional confinement or the administrative particulars of supervised release.

Proposition 69, immediately effective, listed felon and misdemeanant registrants as among those who qualified for DNA sampling. The requirement is not punitive, does not involve concepts of retroactivity or ex post facto implications, but is confined to a simple administrative identifying procedure akin to fingerprinting or keeping one's whereabouts known to law enforcement.

■ Second, section 296(a)(3) deletes the requirement of confinement or probationary supervision at the same time it adds misdemeanant sex offenders. Thus, such offenders are required to submit a sample even though they are no longer confined and have completed probation. It is reasonable to conclude that Proposition 69 contemplates the submission of DNA samples by misdemeanant sex offenders who were convicted before November 2004, and had time to complete their sentences of confinement or their periods of probation prior to the passage of the initiative.[11]

Moreover, the Legislative Analyst's analysis of Proposition 69 stated that the ballot measure "expands the collection of DNA to include all convicted felons *and some nonfelons,*" and that "[t]he expanded list of qualifying offenses would be retroactive regardless of when the person was convicted . . . ." (Voter Information Guide, Gen. Elec. (Nov. 2, 2004) analysis of Prop. 69 by Legis. Analyst, pp. 60–61, italics added; see also <http://www.lao.ca.gov/ballot/2004/69_11_2004.htm> [as of Jan. 16, 2008].) The *only* nonfelons on the expanded list are misdemeanant sex offenders. Thus, the Legislative Analyst was of the view that Proposition 69 applied to misdemeanant sex offenders regardless of the date of their convictions.[12]

Third, we must take note of the statutory purpose of Proposition 69—the broad expansion of DNA sample collection based on the findings by the electorate that DNA analysis "is a useful law enforcement tool for identifying and prosecuting criminal offenders and exonerating the innocent," and that the Act was "necessary . . . to enable the state's DNA and Forensic

---

[11] We believe that the dissent places too much focus on sections 296.1 and 296.2, and not enough focus on section 296, which is the polestar of Proposition 69. Section 296, viewed in the entire statutory context, authorizes the collection of DNA samples from misdemeanant sex offenders regardless of the date of their conviction.

[12] The dissent argues that we have selectively used the Legislative Analyst's analysis by omitting the sentence immediately following the one we have quoted: " 'As a result, DNA would be obtained from adults and juveniles already serving time in correctional facilities as well as those who are on parole or probation for these offenses.' " (Dis. opn., *post,* at p. 1513, italics omitted.) But this sentence was not intended to be a comprehensive statement of the scope of Proposition 69. In the first place, new section 296(a)(3) *deleted* the requirement of confinement or probationary supervision. In the second place, the sentence *did not mention at all that Proposition 69 also applied to sex offenders required to register*—whether felons or misdemeanants.

Identification Database and Data Bank Program to become a more effective law enforcement tool." (§ 295, subd. (b)(1), (3).)

Proposition 69 expanded sample collection to include all felons, including juveniles; adults arrested for or charged with certain felony offenses and, in 2009, any felony offense; and misdemeanant sex offenders. Requiring, for the first time, samples from all felons, from juveniles, from arrestees as opposed to the convicted, and misdemeanant sex offenders shows an intent to broadly expand the use of DNA sample collection—consistent with the modern trend. (See, e.g., *Travis, supra*, 139 Cal.App.4th at pp. 1281–1290 [reviewing cases from numerous jurisdictions upholding DNA collection statutes against 4th Amendment challenges, in light of the interests of law enforcement].) The clear intent of the voters was to maximize the available DNA database to aid in the identification, arrest, and conviction of offenders, as well as to exonerate the innocent. In light of the intent and language of Proposition 69, to exclude past misdemeanant registrants would make no practical sense and defies common sense when the goal was to develop a comprehensive database.

█ Fourth, we must look to the nature of, and the policies behind, sex offender registration. A defendant convicted of a sex offense requiring registration is linked to the justice system for life. He must register every year and when he changes his residence. Failure to register incurs a criminal penalty, and each failure to register is a separate criminal offense. (§ 290.018; *People v. Meeks* (2004) 123 Cal.App.4th 695, 702 [20 Cal.Rptr.3d 445].) And registration is no mere clerical requirement. The Legislature has found and declared that sex offenders pose a high risk of recidivism, and keeping track of their whereabouts is necessary to protect the public. (Stats. 1996, ch. 908, § 1, pp. 5105–5106; see *Wright v. Superior Court* (1997) 15 Cal.4th 521, 527 [63 Cal.Rptr.2d 322, 936 P.2d 101].)

Given the very real threat of recidivism, and the facility of the available tool of DNA identification, the electorate intended and expected that all misdemeanant sex offenders provide a DNA sample. As the appellate division concluded below, it is not the date of conviction that is key—it is the current, ongoing, and lifetime obligation to register that triggers the requirement to provide a DNA sample.

Fifth, Proposition 69 added subdivision (d) to section 295, which clarifies the administrative nature of DNA sample collection: "Like the collection of fingerprints, the collection of DNA samples pursuant to [the Act] is an administrative requirement to assist in the accurate identification of criminal

offenders." As we stressed in *Travis*, the collection of DNA samples is not penal. (*Travis, supra*, 139 Cal.App.4th at p. 1295.)

In *Travis*, the defendant's current offense, a felony, was committed prior to the passage of Proposition 69. (*Travis, supra*, 139 Cal.App.4th at pp. 1278, 1294.) We held that Proposition 69's retroactive section 296.1 was not an ex post facto law, because DNA sample collection is not punitive. "[T]he statute was neither intended to nor does inflict punishment for commission of the crime. . . . Examination of the DNA sample collection law reveals that it was not enacted to punish convicted felons, but instead to establish a DNA database to assist in the identification, arrest, and prosecution of criminals. [Citations.]" (*Travis, supra*, at p. 1295.) Accordingly, we concluded that "subjecting a defendant to DNA testing is not punishment," and section 296.1 was not invalid as an ex post facto law. (*Travis, supra*, at p. 1295.)

There is no constitutional bar to requiring DNA samples based on a conviction predating Proposition 69, so long as there remains a current requirement to register.

■ For all these reasons, we cannot place overriding importance on Proposition 69's failure to amend section 296.2 to include misdemeanant sex offenders. In section 295, subdivision (b)(2) and section 296(a)(3), the people stated their intent that misdemeanant sex offenders must submit DNA samples. We have set forth above the various indications that the people intended this requirement to apply to any misdemeanant sex offender required to currently register, regardless of the date of the offense. That requirement stands, and we believe it is not undercut by the failure to amend section 296.2. Given these clear statements of intent, Proposition 69 contemplates that the simple administrative process for submitting samples at the time of registration—specified for felons in section 296.2—would be followed in the case of misdemeanants. ■ When interpreting legislation, "[m]atters to be considered include the context of the legislation, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction. [Citations.]" (*Flowmaster, Inc. v. Superior Court* (1993) 16 Cal.App.4th, 1019, 1028 [20 Cal.Rptr.2d 666].)[13]

---

[13] We disagree with the dissent that we have selectively used interpretive tools to reach a result not intended by the electorate. (Dis. opn., *post*, at pp. 1513–1515.) The entire context of Proposition 69—which we believe did far more than just "overrule *Brewer*"—shows the intent of the voters to extend the DNA sampling requirement to all sex offenders, including misdemeanants, regardless of the date of their convictions. We do no more than recognize, and uphold, the intent of the people of this state.

■   Petitioner, a qualifying offender under section 296(a)(3), is required to register each year or when he changes his residence. The additional administrative requirement, in this case, to provide a DNA sample when he next registers carries out the people's intent and purpose, and the statutory requirement expressed in Proposition 69.

## IV. DISPOSITION

The order to show cause is discharged. The petition for writ of prohibition is denied. The stay heretofore imposed will be dissolved when the remittitur issues.

Swager, J., concurred.

**MARGULIES, J.,** Dissenting.—I respectfully dissent. I have no quarrel with the majority's conclusion that Good, as a past sex offender, is a person required to provide a DNA sample under Penal Code section 296.[1] What the majority overlooks, however, is that collection of a DNA sample under the DNA and Forensic Identification Database and Data Bank Act of 1998 (Stats. 1998, ch. 696, § 2) (Act) does not follow automatically from a past offender's qualification under section 296. Rather, the Act very specifically delineates, and therefore limits, the circumstances under which a DNA sample may be collected. Those limitations preclude local law enforcement officials from ordering the appearance of a person to provide a DNA sample just because he or she qualifies under section 296.

Section 296.1, subdivision (a) is the primary statute governing when and where DNA samples are to be collected. It states that "[t]he specimens, samples, and print impressions required by this chapter shall be collected from persons described in subdivision (a) of Section 296 for present and past qualifying offenses of record as follows . . . ." It then specifies, in six separate paragraphs, when samples are to be collected. All of these paragraphs share one common attribute: they apply only to persons who have some *current* involvement with the criminal justice system through arrest, incarceration, parole, or probation.[2] Because there is no evidence Good has had a recent arrest or conviction, section 296.1 does not apply to him.

---

[1] All further statutory references are to the Penal Code.

[2] Pursuant to section 296.1, subdivision (a), DNA sample collection is to occur (1) upon arrest for certain felonies; (2) from persons held in custody; (3) from persons on "probation, parole, or other release"; (4) from parole violators returned to custody; (5) from persons accepted into custody in California from other states; and (6) from federal prisoners. (§ 296.1, subd. (a)(1)–(6).)

Good is, however, a registered sex offender, and he is therefore required to report once a year to his local police station for registration. Although the police department letter directing Good to report for sampling does not appear to have been timed to coincide with his annual registration, the requirement of annual registration does involve Good with the criminal justice system in a current, if limited, way. Section 296.2, subdivision (c) authorizes the collection of a DNA sample from past sex offenders at the time of their annual registration, if the offender has not provided a DNA sample previously. Section 296.2, however, expressly states that it applies only to persons who are required to register as the result of a *felony* sex offense. Under " 'the familiar principle of *expressio unius est exclusio alterius*' " (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 944–945 [63 Cal.Rptr.3d 50, 162 P.3d 569]), which holds "that the expression of one thing in a statute ordinarily implies the exclusion of other things" (*In re J. W.* (2002) 29 Cal.4th 200, 209 [126 Cal.Rptr.2d 897, 57 P.3d 363]), this express restriction of DNA sampling to felony sex offenders requires us to construe section 296.2 to *preclude* the sampling of past misdemeanant sex offenders, like Good, at the time of their annual registration.

While the majority acknowledges the foregoing statutory restrictions, it errs in expressly deciding to disregard them. The majority recognizes that the requirement for current sampling of past misdemeanant sex offenders cannot conclusively be derived from section 296 itself, since Proposition 69 did not insert a retroactivity provision in that section. (Maj. opn., *ante*, at p. 1506.) Because it contains no retroactivity provision, amended section 296—viewed in isolation—retains the ambiguity that permitted *People v. Brewer* (2001) 87 Cal.App.4th 1298 [105 Cal.Rptr.2d 293] (*Brewer*) to conclude that the Act is not retroactive. (87 Cal.App.4th at p. 1303.)[3]

Given the ambiguity of section 296, the best source for meaning is the remaining provisions of the Act. (*People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 708–709 [61 Cal.Rptr.3d 689, 161 P.3d 198].) The majority turns first to section 296.1, which it accurately characterizes as "a provision to implement the goals of section 296" (maj. opn., *ante*, at p. 1507), i.e., by describing the manner in which the samples authorized in section 296 are to be collected. Rather than recognizing the importance of the limitation placed by section 296.1 on section 296, however, the majority simply dismisses it, concluding, "Section 296.1 does not deal with sex offender registrants, and never did." (Maj. opn., *ante*, at p. 1507.)

---

[3] As discussed *post*, Proposition 69's inclusion of a retroactivity provision in section 296.1 removed this ambiguity in the circumstances described by *Brewer*—that is, when a past offender is once again detained. Section 296.1 does not, however, address or resolve Good's situation.

Unable to find an answer in section 296.1, the majority jumps to the conclusion that "a one-time sample collection at the next registration from one required to register annually does not need a statutory directive . . . ." (Maj. opn., *ante*, at p. 1507.) Of course, as discussed *ante*, there *is* such a "statutory directive." Section 296.2 authorizes the collection of samples from sex offenders at the time of sex registration, *but it applies only to felons.* Accordingly, section 296.2 must be interpreted as *excluding* collection of DNA samples from past misdemeanant sex offenders, thereby conclusively answering the question posed by the ambiguity of section 296. Rather than acknowledge the implications of this limitation, the majority decides, instead, not to place "overriding importance" on section 296.2. (Maj. opn., *ante*, at p. 1510.)

Proposition 69's failure to amend section 296.2 cannot be so easily sidestepped. Because section 296.2 expressly *excludes* the majority's construction, its implications can be disregarded only if the failure to delete the restriction to past felony sex offenders can be characterized as a drafting error. Yet under *People v. Garcia* (1999) 21 Cal.4th 1 [87 Cal.Rptr.2d 114, 980 P.2d 829], courts must refrain from presuming a drafting error "when the statute is reasonably susceptible to an interpretation that harmonizes all its parts without disregarding or altering any of them." (*Id.* at p. 6.) Plainly the interpretation put forward in this dissent—that the statute means what it says—is just such a harmonizing interpretation. As a result, the voters' failure to amend section 296.2 to square with the majority's interpretation cannot be dismissed as a mere oversight.

The majority makes selective use of other interpretive tools as well. Their decision quotes the analysis of the Legislative Analyst, circulated to voters, as concluding that " '[t]he expanded list of qualifying offenses would be retroactive regardless of when the person was convicted . . . .' " (Maj. opn., *ante*, at p. 1508.) Yet the next sentence of the analysis, which the majority omits, states, "As a result, *DNA would be obtained from adults and juveniles already serving time in correctional facilities as well as those who are on parole or probation for these offenses.*" (Voter Information Guide, Gen. Elec. (Nov. 2, 2004) analysis of Prop. 69 by Legis. Analyst, pp. 60–61, italics added.) In other words, the Legislative Analyst never believed, and voters were never informed, that past misdemeanant sex offenders, despite having no further connection with law enforcement, could be recalled at any time by the police to provide DNA samples.

Accordingly, the majority's interpretation finds no support in any of the sources considered most important in interpreting legislation—related statutory provisions and the contemporary legislative history materials. Section 296 itself is unrevealing, since the majority acknowledges that, standing alone, it

is ambiguous. Section 296.1 is ruled out, since the majority believes it has nothing to do with sex offenders. Section 296.2 actually contradicts the majority's position, as does the analysis of the Legislative Analyst.

The majority is forced to cobble together support from less favored sources of statutory intent and from "the nature of, and the policies behind, sex offender registration." (Maj. opn., *ante*, at p. 1509.) Yet even these sources are unhelpful. Section 295, subdivision (b)(2), for example, which states that it is the intent of the people to require DNA samples "from all persons, including juveniles, for the felony and misdemeanor offenses described" in section 296, does not even *mention* past offenders, let alone state that the Act is intended to apply to all past offenders, rather than only those who have reoffended. The other indications of statutory intent and purpose relied on by the majority are similarly silent on the precise question before us.

My reading of the statute does not ignore Proposition 69 and its impact on the Act. The timing and language of Proposition 69's retroactivity provisions make clear that their purpose was to overrule *Brewer,* nothing more. *Brewer* held that if a person who committed a past qualifying offense under section 296 once again commits a crime, and therefore comes within the collection provisions of section 296.1, a DNA sample may not be collected unless the new crime is also a qualifying offense. Following Proposition 69, if a past qualifying offender once again commits a crime, and therefore comes within section 296.1, a DNA sample must be collected regardless of the nature of the new crime.

In construing a statute, "[o]ur objective is to determine the drafter's intent." (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 902 [55 Cal.Rptr.3d 534, 152 P.3d 1109].) This is a structured search. "[W]e look first to the statutes' words, as these ' "generally provide the most reliable indicator of legislative intent." ' " (*Bernard v. Foley* (2006) 39 Cal.4th 794, 804 [47 Cal.Rptr.3d 248, 139 P.3d 1196].) " 'If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain meaning of the statute governs.' " (*People v. Allegheny Casualty Co., supra,* 41 Cal.4th at p. 709.) Viewed as a whole, the language of the Act gives very clear instruction. Although a wide range of past offenders are covered by section 296, police are authorized to collect DNA samples from those offenders only if they reoffend (or are arrested for certain crimes) or are past felony sex offenders. Because Good does not fit these categories, the police exceeded their authority when they ordered him to appear at the station to provide a DNA sample.

Our deferential duty in interpreting legislation was summed up in *People v. Castille* (2003) 108 Cal.App.4th 469, 490 [133 Cal.Rptr.2d 489] (judg. vacated and cause remanded *sub nom. Shields v. California* (2004) 541 U.S. 930 [158 L.Ed.2d 352, 124 S.Ct. 1653]): "We will not, and cannot, do what the Legislature could have, but did not do." In passing Proposition 69, what the voters did was overrule *Brewer.* They manifestly did not approve the general recall of past qualifying offenders authorized by the majority's decision, which would have required the effective repeal of sections 296.1 and 296.2, subdivision (c). The majority does today what the voters could have, but did not do in 2004. Unlike the voters, however, the majority lacks the legislative authority to make such a change.

On February 1, 2008, the opinion was modified to read as printed above. Petitoner's petition for review by the Supreme Court was denied April 23, 2008, S160271. George, C. J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.