Filed 1/21/15  P. v. Marquez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048762 |
| v. | (Super. Ct. No. 08CF3587) |
| DANIEL JOSEPH MARQUEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Affirmed as modified.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Enid A. Camps, Peter Quon, Jr., Parag Agrawal, and Scott Taylor Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Defendant Daniel Joseph Marquez (defendant) was convicted of two counts of second degree burglary, in violation of Penal Code sections 211 and 212.5, subdivision (c), and one count of assault with a deadly weapon, in violation of Penal Code section 245, subdivision (a)(1), with a sentencing enhancement under Penal Code section 667, subdivision (a)(1).[1]  He was sentenced to 25 years to life on the robbery and assault charges, plus 15 years for the sentencing enhancement.

Defendant maintains that he never could have been tied to the 2008 bank robbery had his DNA sample not been seized and entered into the DNA data bank in 2006.  He contends that the seizure of his DNA sample was unlawful because it was not authorized under the DNA and Forensic Identification Database and Data Bank Act of 1998 (§ 295 et seq.) (the Act), as in effect in 2006, and because it violated his federal and state constitutional rights.

The People argue, inter alia, that even if the statutory scheme in effect in 2006 did not permit the nonconsensual taking of defendant's DNA sample, the taking did not violate his Fourth Amendment rights.  They further argue that even if defendant's state constitutional rights were violated, his federal constitutional rights were not violated, so the exclusionary rule was inapplicable and it was not error to deny his suppression motion.  We agree.

Defendant also argues that the abstract of judgment fails to correctly reflect the presentence custody credits to which he was entitled.  The People agree, as do we. The abstract of judgment shall be amended to reflect the proper number of presentence custody credits as specified herein.  The judgment as so modified is affirmed.

---

[1]     All subsequent statutory references are to the Penal Code unless otherwise specifically stated.

FACTS

A. *Background:*

Defendant has a very long criminal record, with many convictions, including those for multiple bank robberies. In 2008, defendant was again arrested for bank robbery, based on a DNA "hit."

Defendant filed a suppression motion, and supplement thereto, in which he sought to suppress both a DNA sample collected from him in 2006 and the evidence tying him to the 2008 bank robbery. As noted above, he argued he never could have been linked to the 2008 evidence, and thus the 2008 bank robbery, without the DNA data bank.

B. *Stipulation:*

At the time of the hearing on the suppression motion, the People and defendant stipulated: "[D]efendant was arrested for a violation of Health and Safety Code section 11350(a) in Ventura County on September 29, 2006. October 3, 2006, authorities from Ventura County collected a sample of defendant's DNA[, without a warrant and without his consent]. The 'qualifying offense' listed for the taking of defendant's DNA [was] 'PC 459.' Defendant was never convicted of, or even charged with, the violation of section 11350 in Ventura County. However, defendant had previously been convicted of a felony violation of Penal Code section 459 (second degree burglary), in Orange County, on February 13, 1986. [¶] The DNA profile generated from the October 3, 2006 sample was entered into the California Department of Justice DNA Data Bank.

"On September 18, 2007, the defendant entered a guilty plea to a felony count of violating Health and Safely Code section 11350(a) in Orange County case #07NF3339. He was placed on probation and ordered to submit to DNA testing pursuant

to Penal Code section 296. He was further ordered to submit to search and seizure by law enforcement.

"On February 25, 2008, the defendant admitted to violating his terms of probation after failing to appear for a court-ordered case review. He was reinstated on probation and again ordered to submit to DNA testing."

The parties further stipulated that evidence was left by a suspect at the scene of a robbery on August 5, 2008, and that DNA taken from the evidence matched defendant's DNA profile in the DNA data bank.

"On October 21, 2008, the defendant admitted to a second violation of probation in Orange County case number 07NF3339. He was reinstated on probation and again ordered to submit to DNA testing."

On November 25, 2008, defendant was arrested and another DNA sample was taken. That sample matched the DNA from the robbery evidence.

*C. Trial Court Ruling:*

The trial court denied defendant's motion to suppress. It held that defendant's DNA sample was not collected unlawfully, but even if it had been, there was an independent intervening act when, in 2007, defendant was convicted of another felony and ordered to provide a DNA sample at that time.

II

DISCUSSION

*A. Motion to Suppress:*

Section 1538.5, subdivision (a)(1)(A) provides that "[a] defendant may move . . . to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure . . ." if "[t]he search or seizure without a warrant was unreasonable." "'Pursuant to article I, section 28, of the California Constitution, a trial court may exclude

4

evidence under Penal Code section 1538.5 only if exclusion is mandated by the federal Constitution.' [Citation.]" (*People v. Robinson* (2010) 47 Cal.4th 1104, 1119.)

"In ruling on a motion to suppress, the trial court finds the historical facts, then determines whether the applicable rule of law has been violated. 'We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]' [Citation.]" (*People v. Hernandez* (2008) 45 Cal.4th 295, 298-299.)

*B. DNA Testing:*

*(1) Penal Code sections 296, 296.1 and 297—*

Defendant argues that the collection of his DNA sample in 2006 was unlawful pursuant to sections 296 and 296.1 as then in effect.

Section 296, subdivision (a)(1), (2) provides in pertinent part: "(a) The following persons shall provide buccal swab samples, right thumbprints, and a full palm print impression of each hand, . . . for law enforcement identification analysis: [¶] (1) Any person, . . . who is convicted of . . . any felony offense . . . . [¶] (2) Any adult person who is arrested for or charged with any of the following felony offenses: [¶] (A) Any felony offense specified in Section 290 . . . . [¶] (B) Murder or voluntary manslaughter . . . . [¶] (C) Commencing on January 1 of the fifth year following enactment of the act that added this subparagraph, as amended, any adult person arrested or charged with any felony offense." As defendant points out, Proposition 69, effective November 3, 2004, is the act triggering the five-year date described subdivision (a)(2)(C). (Prop. 69, as approved by voters, Gen. Elec. (Nov. 2, 2004); cf. *Good v. Superior Court* (2008) 158 Cal.App.4th 1494, 1503-1504.)

5

Defendant argues the section 296, subdivision (a)(2)(C) mandate that any adult arrested for any felony shall provide a buccal swab sample had not yet become effective when his DNA sample was taken in October 2006. Consequently, he reasons, the collection of his DNA sample in 2006 was unlawful under section 296, subdivision (a)(2)(C) as then in effect.

He further observes that section 296.1, subdivision (a), as amended by Proposition 69, reads: "The specimens, samples, and print impressions required by this chapter shall be collected from persons described in subdivision (a) of Section 296 for present and past qualifying offenses of record as follows: [¶] (1) Collection from any adult person following arrest for a felony offense as specified in subparagraphs (A), (B), and (C) of paragraph (2) of subdivision (a) of Section 296: [¶] . . . [¶] (2) Collection from persons confined or in custody after conviction or adjudication: [¶] . . . [¶] (3) Collection from persons on probation, parole, or other release: [¶] . . . [¶] (4) Collection from parole violators and others returned to custody: [¶] . . . [¶] (5) Collection from persons accepted into California from other jurisdictions: [¶] . . . [¶] (6) Collection from persons in federal institutions: . . . ."

Defendant says that when he was arrested in 2006, "he was not then in confinement or custody for any conviction or adjudication; on probation, parole or other release; a parole violator or other person being returned to custody; a person accepted into California from another jurisdiction; or a person in a federal institution; hence, the provisions of section 296.1, subdivision (a)(2), (a)(3), (a)(4), (a)(5), or (a)(6) did not apply to [him]."

Even though, when defendant was in custody in 2006, he had previously been convicted of a felony, in 1986, he does not construe either section 296, subdivision (a)(1) or section 296.1, subdivision (a)(2) as being applicable because he was not in custody *with respect to* the 1986 conviction when his sample was taken. He appears to

6

construe the section 296.1, subdivision (a)(2), language concerning the taking of samples "from persons confined or in custody after conviction" as meaning that the person must be in custody both *after* conviction and *on account of* the conviction.

Interestingly, while the People argued before the trial court that sections 296 and 296.1, as in effect in 2006, then permitted the taking of defendant's DNA sample, they now appear to drop that argument. However, the People make several other points.

They argue, inter alia, that even if the collection of defendant's DNA sample was not permitted under sections 296 and 296.1 as then in effect, section 297 made clear that this was not a ground for reversal of his resulting conviction. Former section 297, subdivisions (e) and (f), as amended by Proposition 69, read: "(e) The limitation on the types of offenses set forth in subdivision (a) of Section 296 as subject to the collection and testing procedures of this chapter is for the purpose of facilitating the administration of this chapter by the Department of Justice, and *shall not be considered cause for . . . reversing a verdict or disposition.* [¶] (f) The . . . *conviction* of a person based upon a data bank match . . . *is not invalidated* if it is determined that the specimens, samples, or print impressions were obtained or placed or retained in a data bank or database by mistake." (Prop. 69, as approved by voters, Gen. Elec. (Nov. 2, 2004), italics added; see now current § 297, subds. (f), (g).)

*(2) Violation of Federal Constitutional Rights—*

Defendant retorts that section 297 does not control, because it cannot immunize a criminal conviction from invalidation when the conviction is the result of a federal Fourth Amendment violation. The People maintain that even if the taking of defendant's DNA sample was not permitted by California statute in 2006, the taking nonetheless did not violate defendant's Fourth Amendment rights. We agree with the People.

It is clear that the nonconsensual taking of a DNA sample is a search "entitled to the protections of the Fourth Amendment. [Citation.]" (*People v. Robinson, supra,* 47 Cal.4th at pp. 1119-1120; *People v. King* (2000) 82 Cal.App.4th 1363, 1370-1371.) "'As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is "reasonableness."' [Citation.] [¶] 'Reasonableness . . . is measured in objective terms by examining the totality of the circumstances' [citation], and 'whether a particular search meets the reasonableness standard "'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'"' [Citations.]" (*People v. Robinson*, *supra*, 47 Cal.4th at p. 1120; *People v. King*, *supra*, 82 Cal.App.4th at p. 1371.)

"The reduction in a convicted person's reasonable expectation of privacy specifically extends to that person's identity. Indeed, not only persons convicted of crimes, but also those merely suspected of crimes, routinely are required to undergo fingerprinting for identification purposes. As to convicted persons, there is no question but that the state's interest extends to maintaining a permanent record of identity to be used as an aid in solving past and future crimes, and this interest overcomes any privacy rights the individual might retain." (*People v. King*, *supra*, 82 Cal.App.4th at p. 1374.)

"In short, any argument that Fourth Amendment privacy interests do not prohibit gathering information concerning identity from the person of one who has been convicted of a serious crime, or of retaining that information for crime enforcement purposes, is an argument that long ago was resolved in favor of the government." (*People v. King*, *supra*, 82 Cal.App.4th at p. 1375, fn. omitted.) As our California Supreme Court has put it, the "nonconsensual extraction of biological samples from adult felons is reasonable because 'those convicted of serious crimes have a diminished expectation of privacy and the intrusions authorized by the Act are minimal' while 'the

8

Act serves compelling governmental interests,' including "'the overwhelming public interest in prosecuting crimes *accurately*." [Citation.]'" (*People v. Robinson*, *supra*, 47 Cal.4th at p. 1121.)

Given this, the California Supreme Court in *People v. Robinson*, *supra*, 47 Cal.4th 1104, concluded that even though the defendant's DNA sample was taken in violation of the Act, the statutory violation did not give rise to a Fourth Amendment violation.[2] (*Id.* at p. 1119.) The court observed: "The fact that [the defendant's] blood was collected in violation of our state law at the time does not alter our Fourth Amendment analysis. That law was more restrictive than the Fourth Amendment and, for Fourth Amendment purposes, it is not dispositive that a search and seizure was not permissible under state law. The United States Supreme Court has held that, as far as the federal Constitution is concerned, 'whether state law authorized the search [is] irrelevant.' [Citations.] The Supreme Court explained that the Fourth Amendment is not historically understood 'as a redundant guarantee of whatever limits on search and seizure legislatures might have enacted' [citation], and that its meaning does not change 'with local law enforcement practices,' which "'vary from place to place and from time to time."' [Citation.]" (*People v. Robinson*, *supra*, 47 Cal.4th at p. 1122.)

Defendant maintains that the case of *People v. Robinson*, *supra*, 47 Cal.4th 1104 is trumped by the United States Supreme Court's more recent decision in *Maryland*

_____

[2] Because we hold that there was no violation of defendant's Fourth Amendment rights in this case, we need not address the alternate holding in *People v. Robinson, supra,* 47 Cal.4th 1104. The *Robinson* court also held that even if there were a Fourth Amendment violation, it would not be appropriate to apply the federal exclusionary rule. (*Id.* at p. 1124.) It stated, inter alia, that "'[b]ecause the broad scope of [the Proposition 69] amendment all but eliminates the likelihood that biological specimens will be mistakenly collected or analyzed, no deterrent effect would be achieved by excluding evidence obtained from a sample mistakenly collected under an earlier version of the Act when the same search would be lawful under current law.'" (*Id.* at p. 1129, fn. 23.)

*v. King* (2013) __ U.S. __ [133 S.Ct. 1958]. He further contends that the decision in *Maryland* shows that the collection of his DNA sample was a Fourth Amendment violation.

In *Maryland v. King*, *supra*, __ U.S. __ [133 S.Ct. 1958], the Supreme Court addressed the constitutionality of taking a DNA swab pursuant to a Maryland statute. (*Maryland v. King*, *supra*, __ U.S. __ [133 S.Ct. at pp. 1965-1966].) That statute allowed the collection of DNA samples from arrestees charged with certain crimes, but provided that the samples could not be processed before the arrestees were arraigned, at which point a judicial officer determined the existence of probable cause to detain the arrestee. (*Maryland v. King*, *supra*, __ U.S. __ [133 S.Ct. at p. 1967].)

The Supreme Court in *Maryland v. King*, *supra*, __ U.S. __ [133 S.Ct. 1958] stated: "In . . . the context of a valid arrest supported by probable cause [an arrestee's] expectations of privacy [are] not offended by the minor intrusion of a brief swab of his cheeks. By contrast, that same context of arrest gives rise to significant state interests in identifying [an arrestee] not only so that the proper name can be attached to his charges but also so that the criminal justice system can make informed decisions concerning pretrial custody. Upon these considerations the Court concludes that DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure. When officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment." (*Maryland v. King*, *supra*, __ U.S. __ [133 S.Ct. at p. 1980].)

Relying on *Maryland v. King*, *supra*, __ U.S. __ [133 S.Ct. 1958], defendant contends that because, in October 2006, he was arrested without being charged, and was released without a probable cause determination by a judicial officer,

the collection of a DNA sample without a warrant and without his consent was a Fourth Amendment violation.  We disagree.

We do not read more into *Maryland v. King*, *supra*, __ U.S. __ [133 S.Ct. 1958] than it says.  While the Supreme Court in that case was addressing a statute that specified DNA samples could be processed only after an arrestee had been arraigned, and the court found the statutory procedure constitutional, the court did not state that the collection and processing of DNA samples is unconstitutional in all other contexts.  It certainly did not state that the collection and processing of an arrestee's DNA is constitutional when done after arraignment but unconstitutional when done after a felony conviction.[3]

The People note that the Ninth Circuit, in *Haskell v. Harris* (9th Cir. 2014) 745 F.3d 1269, recently addressed the "question:  Is California's DNA collection scheme constitutional as applied to *anyone* 'arrested for, or charged with, a felony offense by California state or local officials?'" (*Id.* at p. 1271.)  It held:  "After *Maryland v. King*, __ U.S. __, 133 S.Ct. 1958, 186 L.Ed.2d 1 (2013), the answer is clearly yes." (*Haskell v. Harris, supra,* 745 F.3d at p. 1271.)

The particular question before us is whether, when an individual is arrested for a felony offense, and his or her DNA is collected not on account of that arrest, but with respect to a prior felony conviction, the DNA collection constitutes a Fourth Amendment violation.  Surely, if it is constitutional to collect his or her DNA because of the current arrest, a fortiori, it is also constitutional to collect his or her DNA because of a

---

[3]    We note that the court in the recent case of *People v. Buza* (2014) 231 Cal.App.4th 1446 was critical of the Supreme Court in *Maryland v. King*, *supra*, __ U.S. __ [133 S.Ct. 1958].  Whether or not we find any of those criticisms to be persuasive, we apply *Maryland v. King*, *supra*, __ U.S. __ [133 S.Ct. 1958] as we interpret it.

11

prior felony *conviction*.[4]  (Cf. *Maryland v. King*, *supra*, __ U.S. __ [133 S.Ct. 1958].)

> *(3)  Violation of State Constitutional Rights—*

In his opening brief on appeal, defendant did not raise any arguments based on the California Constitution.  However, after we held oral argument in this matter, a case was decided addressing whether the collection of DNA samples under the Act violates the California Constitution.  (*People v. Buza*, *supra*, 231 Cal.App.4th 1446.)  Defendant requested that we vacate submission of this matter and permit both further briefing on *People v. Buza* and additional oral argument.  We granted the request to vacate submission and permit further briefing, but did not grant the request for additional oral argument.  The parties each submitted further briefing.

In *People v. Buza*, *supra*, 231 Cal.App.4th 1446, the court addressed "the constitutionality of a provision of the [Act], which requires that a DNA sample be taken from all adults arrested for or charged with any felony offense 'immediately following arrest, or during the booking . . . process or as soon as administratively practicable after arrest . . . .' [Citations.]" (*Id.* at pp. 1450-1451, fn. omitted.)  The *Buza* court vigorously criticized the Supreme Court's decision in *Maryland v. King*, *supra*, __ U.S. __ [133 S.Ct. 1958], but made clear that it based its decision "solely upon article I, section 13, of the California Constitution, which in [its] view undoubtedly prohibit[ed] the search and seizure at issue." (*People v. Buza*, *supra*, 231 Cal.App.4th at pp. 1451, 1459-1465.)

The defendant in *People v. Buza*, *supra*, 231 Cal.App.4th 1446 was arrested for setting fire to a police car in January 2009.  A few hours after his arrest, he was asked to provide a DNA sample and refused, even though he was told that his refusal would constitute a misdemeanor.  (*Id.* at pp. 1451-1452.)  Ultimately, the defendant was found guilty of refusing to provide a DNA sample (§ 298.1, subd. (a)), in addition to arson,

---

4        Given this holding, we need not address the People's additional arguments concerning the independent source doctrine and the inevitable discovery doctrine.

vandalism, and possession of combustible material. (*People v. Buza*, *supra*, 231 Cal.App.4th at pp. 1452-1453.)

On appeal, the defendant in *People v. Buza* did "not challenge the . . . Act in all its applications—such as its requirement of postconviction DNA testing." (*People v. Buza*, *supra*, 231 Cal.App.4th at p. 1467, fn. 7.) Rather, the defendant challenged "only the specific search demanded of him, after his arrest and before he was formally charged." (*Ibid.*)

The court observed that "the scope of permissible searches of arrestees is one of the specific areas in which article I, section 13, [of the California Constitution] has been held to provide greater protection than the Fourth Amendment. [Citations.]" (*People v. Buza, supra*, 231 Cal.App.4th at p. 1480.) Greater protection notwithstanding, "[s]ince the adoption of Proposition 8, evidence cannot be excluded as violative of state protections against unreasonable search and seizure unless it would also be inadmissible under the Fourth Amendment. [Citation.]" (*People v. Buza*, *supra*, 231 Cal.App.4th at p. 1483, fn. omitted.) The *Buza* court further stated: "[I]t would be surprising to find California cases decided after Proposition 8 discussing differences in the substantive scope of the state and federal search and seizure provisions, as it is highly unusual for search and seizure issues to arise in any context other than a suppression motion, which Proposition 8 requires to be decided according to federal law. The unavailability of the exclusionary rule as a remedy for violations of the state Constitution that are not violations of the Fourth Amendment means that state courts considering suppression of evidence must engage in a Fourth Amendment analysis. [Citation.]" (*People v. Buza*, *supra*, 231 Cal.App.4th at p. 1485.) The court reiterated that the case before it had "nothing to do with the exclusionary rule," stating: "The question here is not whether an illegal search and seizure requires suppression of evidence at trial but whether the state

13

can criminalize the refusal to comply with a search that would violate the state's proscription against unreasonable searches." (*Id.* at pp. 1485-1486.)

The People in the matter before us aptly observe that *People v. Buza*, *supra*, 231 Cal.App.4th 1446 is inapposite, inasmuch as it did not involve a suppression motion, whereas the case before us does. That being so, we apply the rule that, even if the collection of defendant's DNA sample violated the state constitution, it would not be error to deny his suppression motion unless collection of the sample also violated the Fourth Amendment. (*Id.* at p. 1485.)

Defendant maintains that the collection of his DNA sample violated both the state constitution and the Fourth Amendment, so the evidence should have been suppressed under *People v. Buza*, *supra*, 231 Cal.App.4th 1446. However, as we have already discussed, there was no Fourth Amendment violation in this matter. Consequently, *People v. Buza*, *supra*, 231 Cal.App.4th 1446 does not compel reversal.

*C. Custody Credits:*

The court awarded defendant credit for 1,602 actual days served and 240 days of conduct credit, for a total of 1,842 days. Defendant argues the court should have awarded him credit for 1,906 days.

As defendant explains, he was taken into custody on December 24, 2008. At the time of sentencing on July 8, 2013, he had been in custody for 1,658 actual days. That number of days, multiplied by 15 percent, equals 248 days—the number of days of conduct credit defendant should have received under section 2933.1. Consequently, defendant's total custody credit award should have been 1,906 days (the sum of 1,658 and 248 days). (§§ 2900.5, 2933.1.)

The People agree. So do we.

14

III

DISPOSITION

The judgment is modified to award defendant 1,906 total credits for time served, consisting of 1,658 actual days served and 248 days in conduct credits.  The clerk of the superior court is directed to prepare an amended abstract of judgment and send a certified copy to the Department of Corrections and Rehabilitation.  The judgment is affirmed as modified.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.